2006 WY 31

Jamie STANTON, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 05–87.

Supreme Court of Wyoming.

March 20, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and WALDRIP, D.J.

1. Mr. Clifton testified that diversion services include counseling, mentoring and behavior modification.

KITE, Justice.

[¶1]  Jamie Stanton was convicted by a jury of bribery in violation of Wyo. Stat. Ann. § 6–5–102(a)(ii) (LexisNexis 2005). The district court sentenced him to six to ten years in prison with credit for 259 days served prior to imposition of the sentence. Mr. Stanton appeals, claiming the district court abused its discretion in denying his motion for acquittal when no evidence showed he was a public servant performing a governmental function, necessary elements for conviction under Wyo. Stat. Ann. § 6–5–102(a)(ii). Mr. Stanton also claims the statute is unconstitutionally vague. We affirm.

## ISSUES

[¶2]  Mr. Stanton states the issues as follows:

*ISSUE I*

Whether the district court erred when it denied the motion for judgment of acquittal.

*ISSUE II*

Whether the public official bribery statutes are unconstitutionally vague.

The State re-phrases the issues as follows:

I.  Did the district court properly deny appellant's motion for judgment of acquittal?

II.  Are Wyo. Stat. §§ 6–5–102(a)(ii) and 6–5–101(a)(ii) and (vi) unconstitutionally vague, either on their face or as applied to appellant?

## FACTS

[¶3]  Mr. Stanton was an employee of Juvenile Electronic Management Services (JEMS), a youth and family counseling agency and diversion services [1] provider for youth and families involved in the juvenile justice system. JEMS was owned and operated by Rick Clifton. JEMS had collaborative agreements with most of the social services agencies in Cheyenne, including an agreement with Frontier Correctional Systems (FCS) to provide case management for youth having

to pursue educational opportunities outside the traditional school environment. JEMS obtained all of its clients through court order and one hundred percent of its funding came from city, county and state entities.

[¶ 4] On October 3, 2003, the district court ordered JRJ, a minor involved in the juvenile justice system, to participate in the day treatment school offered at FCS by collaborative agreement between FCS and JEMS. Mr. Stanton was JEMS' liaison with FCS. In that capacity, he was responsible for reporting JRJ's progress to Mr. Clifton, JRJ's parents and the multidisciplinary team assigned to JRJ's case.

[¶ 5] On April 19, 2004, Mr. Stanton telephoned JRJ's mother and told her JRJ had been caught with methamphetamine. Two days later, he called again and said he wanted to come to her home to discuss her son's situation. When Mr. Stanton arrived at the home a short time later, he discussed with JRJ's mother the fact that she was moving to Greeley, Colorado and might have to hire a Colorado attorney to represent her son. He asked her how much money she could come up with to pay a retainer fee. Ultimately, she indicated she could come up with $750 in a couple of days. Mr. Stanton advised her that hiring an "outside" attorney who was not familiar with JRJ's case would make things worse for her son. He suggested her son might be taken away from her until he reached the age of twenty-one and she could be charged with abandonment if she moved out of Wyoming. He indicated the $750 could be used as "persuasion money" to make things better for her son.

[¶ 6] Mr. Stanton called JRJ's mother again on April 21, 2004. They set up a time to meet in order for her to give him the money. Prior to meeting with Mr. Stanton, JRJ's mother went to JEMS to speak with Mr. Clifton. She was upset and told Mr. Clifton she thought JEMS was trying to help her son and did not understand how the "persuasion money" would accomplish that. Mr. Clifton did not understand and asked her to explain. When he learned what had happened, Mr. Clifton telephoned the police. Mr. Clifton and JRJ's mother met with police officers, who photocopied the money and

then followed JRJ's mother to her house to meet Mr. Stanton. The officers waited in the back room. When Mr. Stanton arrived, he asked JRJ's mother if she had the money. She handed him $580, the amount she had managed to obtain. As Mr. Stanton left the home, the officers arrested him.

[¶ 7] Mr. Stanton was charged with bribery under Wyo. Stat. Ann. § 6–5–102(a)(ii), which provides:

(a) A person commits bribery, if:

* * * *

(ii) While a public servant, he solicits, accepts or agrees to accept any pecuniary benefit, testimonial, privilege, or personal advantage upon an agreement or understanding that his vote, exercise of discretion or other action as a public servant will thereby be influenced.

Wyo. Stat. Ann. § 6–5–101(a)(ii) and (vi) (LexisNexis 2005) further provide:

(ii) "Governmental function" includes any activity which a public servant is legally authorized to undertake on behalf of a government;

* * * *

(vi) "Public servant" means any officer or employee of government, including legislators and judges, and any person participating, as juror, witness, advisor, consultant or otherwise, in performing a governmental function.

[¶ 8] Trial on the charge against Mr. Stanton began October 18, 2004. At the close of the State's case, the defense moved for a judgment of acquittal, arguing that no evidence had been presented showing that at the time of the alleged offense Mr. Stanton was a public servant performing a governmental function within the meaning of the statutes. Rather, the defense asserted, the evidence showed Mr. Stanton was employed by JEMS, a private company, and was performing a function on behalf of JEMS. After hearing argument from counsel, the district court reserved ruling and requested the parties to submit law supporting their respective arguments the following morning.

[¶ 9] The following day, after the close of the evidence, defense counsel renewed the

motion for judgment of acquittal. The district court again reserved ruling and directed the parties to brief the issue of whether Mr. Stanton was a public servant performing a governmental function at the time he accepted the money. Meanwhile, the jury returned a verdict finding Mr. Stanton guilty of bribery under Wyo. Stat. Ann. § 6–5–102(a)(ii).

[¶ 10] Following the jury verdict, defense counsel filed a renewed motion for judgment of acquittal, and the State filed a response. On November 18, 2004, the district court entered an order denying the motion. In its order, the district court found:

[T]he definition of "public servant" is clear and unambiguous. Public servant means any officer or employee, including any person participating as, juror, witness, advisor, consultant or otherwise who is performing a governmental function. Pursuant to W.S. § 14–6–301(a)(v), "probation" is:

A legal status created by court order following an adjudication of delinquency or in need of supervision, where a child is permitted to remain in the child's home subject to supervision by a city, county or state probation officer, the department of family services or other qualified private organization the court may designate. A child is subject to return to the court for violation of the terms or conditions of probation.

"Probation officer" means a local, county or private agency assigned by a juvenile court to perform probation supervision services. W.S. § 14–6–301(a)(vi).

The evidence at trial revealed that JEMS contracts with the State to provide services to juveniles who have been placed on probation. JR was on probation and ordered by Judge Kalokathis to complete the JEMS program. As an employee of JEMS, the Defendant was a private agent providing probationary services on behalf of the state. Probation is a governmental function. Probation officers are public servants. The Court finds that the Defendant is a public servant as defined by W.S. § 6–5–101(a)(vi), because he was acting as a probation officer while performing a governmental function.

Addressing defense counsel's claim that Wyo. Stat. Ann. § 6–5–102 is unconstitutionally vague, the district court concluded:

As noted above, this Court found W.S. § 6–5–102(a)(ii) to be clear and unambiguous. This Court also finds that W.S. § 6–5–102(a)(ii) is constitutional. The statute provides a clear statement that a person who is a public servant performing a governmental function fits within the statute.

The district court entered judgment and sentence on January 12, 2005.

## STANDARD OF REVIEW

[¶ 11] Our standard for reviewing the denial of a motion for a judgment of acquittal is as follows:

"[W]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict.

'A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.' "

*Harlow v. State*, 2005 WY 12, ¶ 51, 105 P.3d 1049, 1070–71 (Wyo.2005). We analyze the question of whether the evidence was sufficient to support the denial of motion for acquittal in the following manner:

"This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would,

or even could, have come to the same result as the jury actually did."

*Id.*

[¶ 12] Along with these standards, our review of the issues Mr. Stanton presents requires application of our well established standards of statutory interpretation.

" 'In interpreting statutes, we primarily determine the legislature's intent. If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous.' We construe together all parts of the statutes in pari materia, and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose.

When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent."

*Merrill v. Jansma,* 2004 WY 26, ¶ 28, 86 P.3d 270, 284–85 (Wyo.2004) (citations omitted).

[¶ 13] The question of whether a statute is constitutional is one of law. *Cathcart v. Meyer,* 2004 WY 49, ¶ 7, 88 P.3d 1050, 1056 (Wyo.2004). We presume statutes to be constitutional and any doubt is resolved in favor of constitutionality. *Id.* The party challenging the statute bears the burden of proving it is unconstitutional. *Id.* A party challenging the constitutionality of a statute has a heavy burden and must clearly and exactly show the unconstitutionality beyond any reasonable doubt. *Id.*

## DISCUSSION

### 1. Denial of Motion for Acquittal

[¶ 14] Mr. Stanton contends the district court erred in denying his motion for acquittal because no evidence was presented to show that he was a public servant performing a governmental function at the time of the alleged offense. He asserts the evidence showed he worked for a private company and was performing a function for his private employer. Therefore, he argues, the evidence did not prove the elements required to be proven under Wyo. Stat. Ann. § 6–5–102(a)(ii) for a bribery conviction.

[¶ 15] The State contends, and the district court held, that Mr. Stanton was a public servant within the meaning of the statute because, as provided in Wyo. Stat. Ann. § 6–5–101(a)(ii) and (vi), he was a "person participating in performing," an "activity" which he "was legally authorized to undertake on behalf of the government." The district court reached this result by concluding that the provision of probationary services is a governmental function; therefore, people who provide probationary services are public servants; Mr. Stanton was providing probationary services; therefore, he was a public servant performing a governmental function when he accepted the money from JRJ's mother as consideration for his help in making things easier for her son.

[¶ 16] We agree with the district court's conclusion. Wyo. Stat. Ann. § 6–5–101(a)(vi) clearly and unambiguously provides that the term "public servant" means, in addition to officers and employees of government, "any person participating ... in performing a governmental function." The term "governmental function" is defined in subsection (ii) of the same provision as including "any activity which a public servant is legally authorized to undertake on behalf of the government." At the time he obtained the "persuasion money" from JRJ's mother, Mr. Stanton was "a person participating" in an "activity which [he was] legally authorized to undertake on behalf of the government." Mr. Stanton, as an employee of JEMS, was participating in the court ordered treatment of JRJ resulting from his involvement in the juvenile justice system.

[¶ 17] In considering this issue, we looked to other jurisdictions for cases in which courts have interpreted similar provisions. None of the cases we found involved the precise language contained in our statute

and, therefore, none of the cases are directly on point. Still, we find discussion of those cases to be of interest.

[¶ 18] In *State v. Mullin*, 778 P.2d 233 (Alaska Ct.App.1989), the court held an employee of a private company that contracted with the state to provide counseling services to inmates at the Fairbanks Correctional Center was not a public servant within the meaning of Alaska's bribery statute. Alaska Stat. § 11.56.120(a) provided that a public servant committed the crime of bribery if he or she solicited, accepted or agreed to accept a benefit for engaging in an authorized or required official act.[2] Alaska Stat. § 11.81.900(b)(48) provided:

> "Public servant" means each of the following, whether compensated or not, but does not include jurors or witnesses:
>
> (A) an officer or employee of the state, a municipality or other political subdivision of the state, or a governmental instrumentality of the state, including legislators, members of the judiciary, and peace officers;
>
> (B) a person who participates as an advisor, consultant, or assistant at the request of, the direction of or under contract with the state, a municipality or other political subdivision of the state, or another governmental instrumentality;
>
> (C) a person who serves as a member of the board or commission created by statute or by legislative, judicial, or administrative action by the state, a municipality or other political subdivision of the state, or a governmental instrumentality;
>
> (D) a person nominated, elected, appointed, employed, or designated to act in a capacity defined in (A) through (C) of this paragraph, but who does not occupy the position.

*Mullin*, 778 P.2d at 234. The court concluded the statute was ambiguous in that it did not state whether an employee of a private organization contracting with the state to provide services was a public servant. *Id.* at 236.

[¶ 19] In contrast, in *State v. Cooper*, 1997 Ohio App. LEXIS 5319, the court held an employee of a company that contracted with the state to provide emissions checks was a public servant within the meaning of the Ohio bribery statute. The statute at issue defined public servant as: (1) any public official; (2) any person performing ad hoc a governmental function, including, but not limited to, a juror, member of a temporary commission, master, arbitrator, advisor or consultant. O.R.C. 2921.01(B). In determining whether this provision applied to an employee of a private company that contracted with the state, the court considered an Ohio Ethics Commission advisory opinion defining a person as an agent of the state and a public official when: he or she has the power to act on behalf of and bind the state by his actions; the state has the right to control the person's actions; and the person's actions are directed toward the attainment of a state objective. The court concluded Cooper was a public servant because in conducting emissions testing, he was performing an ad hoc government function and had the power to bind the state by his actions; state procedures for emissions testing controlled his actions; and his actions were directed toward attainment of a state objective. *Id.*

[¶ 20] The case involving statutory language most like ours is *Bailey v. People*, 200 Colo. 549, 617 P.2d 549 (1980). The statute at issue defined public servant as:

> [A]ny officer or employee of government, whether elected or appointed, and any person participating as an advisor, or consultant, engaged in the service of process, or otherwise performing a governmental function.

Colo.Rev.Stat. § 18–8–101(3) (1973). The court held an employee of the Colorado Springs Urban Renewal Effort (CURE), a corporate body created under the authority of the Colorado Urban Renewal Law, was

---

**2.** Alaska Stat. § 11.56.120(a) provides:

A public servant commits the crime of receiving unlawful gratuities if, for having engaged in an official act which was required or authorized and for which the public servant was not entitled to any special or additional compensation, the public servant

  (1) solicits a benefit, regardless of value; or

  (2) accepts or agrees to accept a benefit having a value of $50 or more.

not a public servant within the meaning of the state's bribery statute. However, in reaching that result, the court looked not to the definition of "governmental function," but of "government," which included "any branch, subdivision, institution, or agency of the government of the state or any political subdivision within it." *Bailey*, 617 P.2d at 552. Because the definition of government did not include "any corporation," the court concluded an employee of CURE was not a "public servant" performing a "governmental function" on behalf of a "government" and could not be convicted of bribery.

[¶ 21] Despite the result reached by the Colorado and Alaska courts in construing similar statutory language, we remain convinced that under our statute Mr. Stanton was a public servant performing a governmental function at the time he solicited and accepted the money. In our view, the definition of "governmental function," rather than "government" is the more appropriate focus for resolving the question of when a person is a public servant. The broad language of Wyo. Stat. Ann. § 6–5–101(a)(ii) and (vi) clearly indicates that when *any* person participates in performing an activity which he is legally authorized to undertake on behalf of the government, such as court-ordered treatment for a juvenile involved in the juvenile justice system, he is acting as a public servant, even though his immediate employer may be a private company who contracts with the state.

[¶ 22] Interpreting the federal bribery statute, the United States Supreme Court has said:

The proper inquiry is not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official federal responsibilities.

*Dixson v. United States*, 465 U.S. 482, 496, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984).[3] By analogy, we find the "public trust" language appropriate in the context of Wyoming's comprehensive statutory language. The intent of Wyo. Stat. Ann. § 6–5–102(a) clearly was to proscribe "any person," who is performing an activity he or she is legally authorized to undertake on behalf of a government, from using that authority for pecuniary benefit or personal advantage. Mr. Stanton's actions in attempting to use for personal financial gain his involvement in court-ordered treatment provided by the juvenile justice system by leading JRJ's mother to believe that things would go easier for her son if she paid him the money falls squarely within the scope of Wyo. Stat. Ann. § 6–5–102(a).

### 2. Unconstitutionality of Statute

[¶ 23] Mr. Stanton argues next that Wyo. Stat. Ann. §§ 6–5–102(a)(ii) and 6–5–101(a)(ii) and (vi) are unconstitutionally vague because they do not apprise a person of ordinary intelligence when a person is a public servant performing a governmental function. He presents his claim in two parts, arguing first that the statute is unconstitutionally vague on its face, and second, that it is unconstitutionally vague as applied to him. We address these challenges separately.

[¶ 24] Successful challenges to statutes for facial vagueness are rare. *Griego v. State*, 761 P.2d 973, 975 (Wyo.1988). Courts do not ordinarily permit a party whose particular conduct is adequately described by a criminal statute to challenge the statute on the grounds it does not provide adequate warning concerning other conduct that might fall within its ambit. *Id.* It is only where a statute reaches a substantial amount of constitutionally protected conduct or specifies no

---

**3.** Like the statutes we have mentioned from other states, the language contained in the federal statute is different from that found in Wyoming's bribery statute. 18 U.S.C. § 201(a)(1) prohibits "public officials" from accepting anything of value in return for being influenced in the performance of their official duties. Public official is defined as:

Member of Congress, Delegates from the District of Columbia, or Resident Commissioner ... or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

standard of conduct at all that such challenges will be considered. *Id.*

[¶ 25] Mr. Stanton does not argue that the bribery statute reaches any constitutionally protected conduct. We, therefore, consider his challenge only if the statute specifies no standard of conduct at all. We conclude the bribery statute adequately specifies the standard of conduct it proscribes. Wyo. Stat. Ann. § 6–5–102(a) clearly specifies that the offense of bribery is committed when a public servant solicits, accepts or agrees to accept pecuniary benefit or personal advantage upon an agreement or understanding that his action as a public servant will be influenced thereby. The standard of conduct proscribed is the agreement or acceptance that the public servant's actions will be influenced by the promises of pecuniary benefit or personal advantage. The definition of public servant contained in the preceding provision provides adequate notice that any person participating in a legally authorized act on behalf of a government is subject to penalty for violating the statute. The statute is not so vague as to specify no standard of conduct at all. We turn to Mr. Stanton's claim that the statute is unconstitutionally vague as applied to him.

[¶ 26] In making this determination, we decide whether the statute provides sufficient notice to a person of ordinary intelligence that Mr. Stanton's conduct was illegal. *Griego,* 761 P.2d at 976. We also decide whether the facts of the case demonstrate arbitrary and discriminatory enforcement. *Id.* We have already said in addressing Mr. Stanton's first issue that the statute clearly and unambiguously makes it illegal for any person participating in performing any activity which he is legally authorized to undertake on behalf of a government to solicit, accept or agree to accept pecuniary gain or personal advantage based upon an agreement or understanding that his actions will be influenced thereby. The statute provides sufficient notice to a person of ordinary intelligence that Mr. Stanton's conduct in soliciting and accepting money in exchange for making things easier on JRJ was illegal.

[¶ 27] Mr. Stanton argues the facts of this case demonstrate arbitrary or discriminatory enforcement of the statute in that this jury concluded he was a public servant performing a governmental function while another jury might have concluded otherwise. As in all criminal cases, the jury impaneled to decide Mr. Stanton's case was instructed on the law necessary to support a conviction for bribery. Thus, the jury was instructed verbatim on Wyo. Stat. Ann. § 6–5–102(a)(ii), the elements of bribery, and Wyo. Stat. Ann. § 6–5–101(a)(ii) and (vi), the definitions of the terms "public servant" and "governmental function" found in the bribery statute. It was then the jury's task, as it is in all criminal cases, to apply the evidence presented to the instructions on the law to determine whether the State met its burden of proving each of the elements necessary to support a conviction. While it is always the case that one jury might reach a different result than another on the basis of the same evidence and instructions, that fact does not demonstrate arbitrary or discriminatory enforcement in the sense required for finding a statute unconstitutional as applied. There is simply nothing in the facts presented here supporting a finding that Wyo. Stat. Ann. §§ 6–5–102(a)(ii) and 6–5–101(a)(ii) and (vi) were unconstitutional as applied to Mr. Stanton.

[¶ 28] Affirmed.