2007 WY 157

**Joel Randy FERGUSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–171.

Supreme Court of Wyoming.

Oct. 4, 2007.

478

Representing Appellant: D. Terry Rogers, Interim Public Defender; David E. Westling, Senior Assistant Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Joel Ferguson appeals his conviction on eleven counts of burglary. We affirm.

### ISSUES

[¶ 2] Mr. Ferguson raises the following two issues:

1. Whether the trial court erred in denying Appellant's motion for a judgment of acquittal, made on the basis that the State had not proven the elements of the crime of burglary; and

2. Whether the trial court erred in admitting evidence of prior misconduct.

### FACTS

[¶ 3] Around midnight on July 20, 2004, someone broke into a welding business in downtown Cheyenne, gaining entry by breaking out a small window. That person vandalized the inside of the premises, and took some cash and various small items of modest value, including four sets of welding gloves, some small tools, and several trailer hitch balls. The burglar left behind larger items of higher value. While inside the business, the burglar ate candy bars and drank soda he found there.

[¶ 4] During the following three weeks, a dozen more burglaries occurred in Cheyenne. In each case, it was a business location, and the break-in occurred very late at night or very early in the morning. In every case except one, the burglar gained entry by breaking a window with a rock or other small blunt object. In the one exception, the burglar broke a piece of particle board that had been inserted in a window frame to replace a damaged window. In every case, the burglar vandalized or "ransacked" the business, most often by opening files and cabinets and throwing papers and office supplies around the interior. The burglar took small amounts of cash when it was easily found. In every case, he took items small enough to fit into a bag or backpack, items of relatively modest value such as sets of keys, key fobs, gloves (often with the name of a person or the business written on them), clothing and caps (again, often with names or business logos on them), knives and knife cases, flashlights, small tools, watches, and sunglasses. In many of the cases, the burglar ate or drank the food and drinks he found inside the businesses, including hotdogs with cheese and mustard, a bowl of soup with two bottles of water, some Pepsi, some other soda, and a TV dinner with chips.

[¶ 5] Based on Mr. Ferguson's prior criminal record, which included prior convictions for burglaries with similar modes of operation, the Cheyenne police began to suspect him of committing the new burglaries. Upon learning that Mr. Ferguson had recently returned to Cheyenne, and that he had been staying at the home of Joseph Soriano, the police began watching that house. On August 10, 2004, police confronted Mr. Soriano, who confirmed that Mr. Ferguson was an old friend who had moved into his house approximately July 20, 2004. Mr. Soriano gave the police permission to search the house, where they observed a backpack and other bags piled in a box on the kitchen floor. Mr. Soriano told the officers that the items belonged to Mr. Ferguson. Sticking out of the backpack was a marked glove that the police officers recognized as being taken in one of the recent burglaries. Inside the backpack and other bags, the police found

additional items that had been taken during the recent burglaries.

[¶ 6] Mr. Soriano also told the police that Mr. Ferguson's car was parked a short distance away. After obtaining a warrant, the police searched the vehicle. In the trunk, they found several items that had been stolen in the burglaries.

[¶ 7] Mr. Ferguson was initially charged with thirteen counts of burglary. Two of the charges were dismissed, one before trial and one during. Mr. Ferguson was convicted on the remaining eleven counts. At trial, the prosecution presented little in the way of physical evidence to identify Mr. Ferguson as the burglar. Rather, to show that it was Mr. Ferguson who had committed the crimes, the prosecution relied heavily on the fact that he had been in possession of a significant number of burgled items. This gives rise to Mr. Ferguson's first issue on appeal, which is, in essence, that there was insufficient evidence to prove that he was the one who burglarized the businesses.

[¶ 8] The prosecution also presented testimony from a Cheyenne police officer concerning a break-in at a local restaurant back in September of 2003. The officer testified that he responded to an early morning alarm at the restaurant, and saw a man exit the building. The man was wearing a "pretty distinguishable jacket," a "hip-length black ... parka with a hood." The officer chased the man, but was unable to apprehend him, and so notified other officers and provided a physical description. He then returned to the restaurant, where he determined that someone had entered the building by breaking a window, and then vandalized the building. Shortly thereafter, and not far away, another officer stopped a car and saw a passenger inside who matched the description of the man who had fled the restaurant, including the "distinguishable" jacket. The passenger was questioned, and in a bag belonging to him, police found several items of moderate value that had been taken during burglaries of other Cheyenne businesses. The passenger, of course, was Mr. Ferguson. This testimony provides the basis for Mr. Ferguson's second issue on appeal. He contends that this evidence of other misconduct should have been excluded from his trial pursuant to W.R.E. 404(b).

### DISCUSSION

[¶ 9] In considering whether there was sufficient evidence to convict Mr. Ferguson, we leave out of consideration any evidence in the defendant's favor, and accept as true the evidence for the prosecution, with all logical and reasonable inferences to be drawn from it. *Stanton v. State*, 2006 WY 31, ¶ 11, 130 P.3d 486, 490 (Wyo.2006). We ask if that evidence forms an adequate basis for the jury to find guilt beyond a reasonable doubt. *Id.* We do not substitute our judgment for that of the jury, but rather, determine whether a quorum of reasonable and rational jurors could have concluded that the defendant was guilty. *Id.*, ¶ 11, 130 P.3d at 490–91.

[¶ 10] Mr. Ferguson contends that the only evidence connecting him to the burglaries was his possession of items taken during the burglaries. We have established quite specific rules concerning the use of evidence of the possession of stolen goods:

> When sufficiency of the evidence is challenged in burglary convictions, this Court examines the record, in a light most favorable to the State, to see if there is slight corroborative evidence, other than possession of stolen goods, which connects the appellant with the burglary. *King v. State*, 718 P.2d 452, 453 (Wyo.1986). We have stated that the possession of stolen goods alone is not sufficient evidence to convict for burglary. *Id.* (*quoting Newell v. State*, 548 P.2d 8, 13 (Wyo.1976)). However, we have also concluded with regard to burglary that, " '[t]he most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required' " to convict. *Sutherland v. State*, 944 P.2d 1157, 1161 (Wyo.1997) (*quoting Newell*, 548 P.2d at 13).

*McGarvey v. State*, 2002 WY 149, ¶ 14, 55 P.3d 703, 706 (Wyo.2002). Notably, the trial

court specifically instructed the jury in Mr. Ferguson's case that possession of stolen property was "[t]he most significant and material evidence of defendant's guilt," but that the prosecution was still required to present "slight corroborative evidence of other inculpatory circumstances" to convict Mr. Ferguson. Our task, then, is to examine the evidence in a light most favorable to the State, and determine whether the jury could reasonably have found the slight corroborative evidence needed to connect Mr. Ferguson to the eleven burglaries.

[¶ 11]  The State asserts that it provided the slight corroborative evidence by demonstrating "amazing similarities" among the eleven burglaries with which Mr. Ferguson was charged,

> such as the method of gaining access to each business, the unnecessary vandalism of each business, and the types of minimally valuable property stolen from each business.

To that list we could add the burglar's tendency to leave larger items of greater value at the scene, and his habit of consuming the food and drink he found at the burgled businesses. But while this evidence strongly suggests that the same person committed all of the burglaries, it does nothing to indicate that Mr. Ferguson was the burglar.

[¶ 12]  Our review of the record revealed that the State also provided testimony that a shoe print found at one burglary site had a sole design similar to a shoe known to belong to Mr. Ferguson. The expert witness conceded he "could not come to a definitive conclusion" that the impression was Mr. Ferguson's footprint. A definitive conclusion was not required, however, only slight corroborative evidence. The State also points out that Mr. Ferguson came to Cheyenne and started staying at Mr. Soriano's house at the same time the burglaries began. It also asserts that the sheer number of stolen items in Mr. Ferguson's possession indicates that he did not come by them coincidentally, and the odd nature and minimal value of the items made it unlikely that anyone but the burglar would have found them desirable enough to steal and collect. Taken separately, each of these bits of evidence fails to

prove that it was Mr. Ferguson who committed the burglaries. Taken together, the evidence amounted to at least slight corroboration that Mr. Ferguson had burgled the many stolen items in his possession.

[¶ 13]  In addition, as discussed in detail below, the prosecution offered testimony that Mr. Ferguson had been involved in previous break-ins, including the one at the restaurant, and pointed to similarities between those incidents and the burglaries with which Mr. Ferguson was charged. If this evidence was properly admitted—the issue we consider next—then it, combined with the evidence noted previously, established a firm basis for the jury's determination that the State had provided the corroboration needed to connect Mr. Ferguson to the eleven burglaries.

[¶ 14]  We must ask, however, if the testimony concerning Mr. Ferguson's involvement in previous burglaries should have been ruled inadmissible under W.R.E. 404(b). We uphold a trial court's decision on the admissibility of evidence absent a clear abuse of discretion. A trial court's evidentiary decisions are entitled to considerable deference, and will be upheld if they have a legitimate basis. *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo.2006).

[¶ 15]  W.R.E. 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 16]  We have previously observed that this rule reflects the principle that a defendant in a criminal case "should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Leyva v. State*, 2007 WY 136, ¶ 19, 165 P.3d 446, 452 (Wyo.2007) (*quoting* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed.2007)).

[¶ 17] As did the trial court,[1] we agree with Mr. Ferguson that evidence of his involvement in previous burglaries, and his possession of items stolen in those earlier burglaries, was evidence of "other crimes, wrongs, or acts" that tended to reflect on his character. W.R.E. 404(b) plainly applied to this evidence, but that does not automatically render the evidence inadmissible. As explicitly set forth in the rule, such evidence may be admissible for other purposes, including that of proving identity. The State contends that it offered this evidence of previous burglaries to prove Mr. Ferguson's identity as the person who committed the eleven charged burglaries, based on the similarities between those burglaries and the previous incidents involving Mr. Ferguson.

[¶ 18] Identity is always an element of the crime charged, and must be proven by the prosecution. Identity is, therefore, always a material issue. *Rivera v. State*, 840 P.2d 933, 940 (Wyo.1992); *Pena v. State*, 780 P.2d 316, 321 (Wyo.1989). Consequently, if evidence of uncharged misconduct tends to prove identity of the perpetrator of the charged crime, it is generally admissible. *Id.; see also McCone v. State*, 866 P.2d 740, 752 (Wyo.1993); *Longfellow v. State*, 803 P.2d 848, 853 (Wyo.1990). However, we have cautioned that evidence of other misconduct used to prove identity is admissible only when the inference of identity flowing from it is extremely strong.

> The probity of evidence of other crimes where introduced for this purpose depends upon both the uniqueness of the *modus operandi* and the degree of similarity between the charged crime and the uncharged crime. Of course, it is not necessary that the charged crime and the other crimes be identical in every detail.... But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person.

*Pena*, 780 P.2d at 322 (*quoting United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977)). Where similarities between the prior misconduct and the crimes charged "lack distinction," or appear to be "common components of this type of crime," their lack of probity on the issue of identity may render the evidence inadmissible. *Dean v. State*, 865 P.2d 601, 607 (Wyo.1993).

[¶ 19] With that legal background, we turn to the trial court's decision to admit testimony regarding the prior burglaries. Counsel for Mr. Ferguson had filed a pretrial demand for notice of the prosecution's intent to introduce evidence under W.R.E. 404(b). The prosecution's notice of intent listed three such items: evidence concerning the previous burglaries in which Mr. Ferguson had undisputedly been involved, evidence of Mr. Ferguson's prior burglary convictions, and evidence regarding thirty-three other recent burglaries for which Mr. Ferguson was not charged, but for which he was suspected based on the same or similar mode of operation. The prosecution later argued that these items of evidence were not actually subject to W.R.E. 404(b), but listed the evidence in its notice in an abundance of caution, a practice we find particularly prudent for prosecutors to follow.

[¶ 20] Observing the standards and procedures set forth in *Gleason v. State*, 2002 WY 161, ¶¶ 18, 30, 57 P.3d 332, 340, 343 (Wyo.2002), and its progeny, the trial court held a pretrial hearing to consider the evidence under W.R.E. 404(b). With regard to Mr. Ferguson's prior convictions, the trial court ruled, as the parties had agreed, that the evidence might be admissible if Mr. Ferguson testified at trial. With regard to the thirty-three uncharged burglaries, the trial court ruled that the evidence was inadmissible under W.R.E. 404(b) because the prosecution had not sufficiently established Mr. Ferguson's involvement.

[¶ 21] With regard to the previous burglaries, the trial court satisfied itself that there was sufficient evidence showing that Mr. Ferguson had been the one who committed them. In fact, it appears that Mr. Ferguson's probation was revoked based on his involvement in these previous burglaries, and

1. The Honorable Peter G. Arnold conducted the trial in this case. It was then reassigned to the Honorable Edward L. Grant, who entered the Judgment and Sentence.

although the trial court ruled that fact inadmissible for purposes of trial, the probation revocation did establish Mr. Ferguson's involvement for purposes of the Rule 404(b) hearing. The trial court then considered the similarities between the earlier burglaries and the charged burglaries. The pattern in both sets of burglaries, the prosecution argued, was for the burglar to break a window to gain entry. Businesses were burgled, not homes or public buildings. The burglaries occurred very late at night or early in the morning, and the businesses were vandalized. As in the charged burglaries, the items taken in the previous burglaries were small and of relatively low value, items including keys with business logos, rolls of coins, a Liberty silver dollar, cigarette lighters, and a belt buckle.

[¶ 22] The trial court found these similarities sufficiently distinctive so that the evidence of the previous burglaries was relevant and probative on the issue of Mr. Ferguson's identity as the perpetrator of the charged burglaries. The trial court concluded that the evidence was more probative than unfairly prejudicial, largely because the previous burglaries were no more reprehensible than the charged burglaries, and the evidence would not make Mr. Ferguson any less sympathetic to the jury. It concluded that the evidence was not unnecessarily cumulative, and for all those reasons, ruled that the evidence would be admissible at trial. When the evidence was admitted at trial, the court gave appropriate limiting instructions to the jury two separate times, and again a third time in the written jury instructions.

[¶ 23] We note again that the trial court's decision admitting evidence of the previous burglaries is entitled to substantial deference, and we uphold it if there is legitimate basis for it. *Sanchez,* ¶ 20, 142 P.3d at 1140. In this case, the trial court carefully analyzed the evidence for admissibility under W.R.E. 404(b), and articulated its legitimate basis for admitting the evidence to prove identity. It found the evidence more probative than unfairly prejudicial, and not unnecessarily cumulative. It provided appropriate limiting instructions to guide the jury's consideration of the evidence. We find no abuse of discretion in the district court's decision allowing the evidence.

[¶ 24] Affirmed.