2011 WY 47

**Donald Ray DAVES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–10–0135.**

Supreme Court of Wyoming.

March 14, 2011.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Donald Ray Daves was convicted after a jury trial of twelve counts involving the kidnapping and sexual assault of his wife (hereinafter referred to as "the victim"). On appeal, he challenges the district court's response to a jury question requesting a definition of "used a firearm" and claims he was denied his constitutional right to be present when the court provided supplemental instructions to the jury. He also argues that the evidence was insufficient to convict him

on four counts of first degree sexual assault because the State did not prove that he gained the victim's submission by threatening her, her boyfriend and himself. We affirm.

[¶ 2] Mr. Daves has failed to establish the district court committed plain error when it defined "used a firearm" for the jury. We further conclude that, although the district court erred by failing to provide the supplemental instructions to the jury in open court while the defendant was present, the error was not prejudicial. Finally, the record contains sufficient evidence to support the first degree sexual assault convictions because the State demonstrated Mr. Daves threatened the victim and himself with serious bodily injury or death in order to obtain her submission to the sexual assaults.

## ISSUES

[¶ 3] Mr. Daves presents the following issues on appeal:

I. Did the trial court misinstruct the jury on the definition of "use of a firearm"?

II. Was Mr. Daves denied his right to be present during supplemental jury instruction?

III. Was there sufficient evidence to support all the prosecution theories?

The State provides a more detailed statement of the issues:

I. Did the district court's instruction defining what it means to have "used" a firearm while committing a felony violate clearly established Wyoming law, and was it a valid and reasonable interpretation of Wyo. Stat. Ann. § 6–8–101(a)?

II. Did the district court commit reversible error by conferring with counsel and responding to questions presented by the jury during deliberations?

III. Was the evidence sufficient to support appellant's convictions for first degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–302(a)(ii)?

## FACTS

[¶ 4] On April 4, 2009, Mr. Daves and the victim were in the process of getting a divorce. Mr. Daves told the victim that he was going to return some of her jewelry, so she agreed to meet with him. He picked her up at her residence in Laramie because it was storming and the road conditions were poor. They went to a coffee shop, and he returned some of her jewelry. He told her that the rest of her jewelry was buried with his dead parakeet near an access area on the Laramie River. She agreed to accompany him to the access area to retrieve the jewelry.

[¶ 5] While they were at the access area, Mr. Daves pulled a gun and forced her to perform oral sex on him. He then decided that he would take her to a motel. They went to two different motels because the first one did not have any available rooms. At both places, he hid the gun in his clothing and took the victim into the motel office with him. He told her to "act normal," while they were in the motel offices so that people would not get suspicious. Once they were in the motel room, he put the gun next to him on the bed. He forced her to remove her clothes and have sexual intercourse with him. During that encounter, he put the gun on the table.

[¶ 6] After the second sexual assault, he again aimed the gun at her. He also told her that "somebody was going to die that night." Mr. Daves sexually assaulted the victim two more times. During the course of the night, he alternately pointed the gun at her and himself, threatening to commit suicide in her presence. He also threatened to kill the victim's boyfriend. At some point he put the gun in its case, but then directed her to get it out of the case and kill him with it. He finally dropped her off at her residence the next morning, after she promised to meet him later at a park. He stated, "Do not deceive me. Do not make me use this gun."

[¶ 7] As soon as she arrived home, the victim told her parents about the assaults and they summoned the police. When the officers attempted to contact Mr. Daves at the camper trailer where he was residing, he took off in his vehicle. After leading the officers on a chase over the icy back roads

outside of Laramie, he eventually surrendered.

[¶ 8] The State charged Mr. Daves with one count of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (LexisNexis 2009), one count of possession of a deadly weapon with unlawful intent in violation of Wyo. Stat. Ann. § 6–8–103 (LexisNexis 2009), four counts of first degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–302(a)(ii) (LexisNexis 2009), five counts of use of a firearm while committing a felony in violation of Wyo. Stat. Ann. § 6–8–101(a) (LexisNexis 2009), and one count of kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(a)(ii) (LexisNexis 2009). After a jury trial, he was convicted on all twelve charges. The district court sentenced him to serve a lengthy term of incarceration. Mr. Daves appealed.

## DISCUSSION

### A. Definition of "Used a Firearm."

[¶ 9] Mr. Daves was charged with five counts of use of a firearm while committing a felony, in violation of § 6–8–101(a):

(a) A person who uses a firearm while committing a felony shall be imprisoned for not more than ten (10) years in addition to the punishment for the felony. For a second or subsequent conviction under this section a person shall be imprisoned for not more than twenty (20) years in addition to the punishment for the felony.

Count IV was one of the charges under this statutory section. Instruction No. 13 informed the jury:

For Count IV, the elements of the crime of *Use of Firearm While Committing a Felony*, as charged in this case are:

1. On or about the 4th or 5th day of April 2009;

2. In Albany County, Wyoming;

3. The Defendant, DONALD RAY DAVES;

4. Used a Firearm;

5. While committing the felony of *Sexual Assault in the First Degree* . . . .

[¶ 10] During deliberations, the jury sent the following question to the district court judge: "[W]e have a definition of 'threatened to use a firearm[.]'[1] [W]e would like the definition of '[u]sed a firearm' as referred to in instruction # 13 on [Count] 4." The district court judge called in counsel, without the defendant, and told them about the jury's question and the research his assistant had done on the definition of "use of a firearm." The research had uncovered an ALR article on the definition of "use" of a firearm under 18 U.S.C. § 924(c)(1), which criminalized carrying or using a firearm while committing a violent crime or drug trafficking. F. Dougherty, *What Constitutes "Use" of a Firearm for Purposes of 18 U.S.C.A., § 924(c)(1), Providing Penalty for Use of Firearm During Drug Trafficking Crime or Crime of Violence*, 125 A.L.R. Fed. 545 (1995).

[¶ 11] At first, defense counsel stated that he did not believe the jury needed to be instructed on the definition because "this is not technical legal language." He stated that he thought they should be instructed to "use their common understanding of the word." The district court judge decided to instruct the jury in writing, as follows:

LADIES AND GE[N]TLEMEN:

As a general proposition, a firearm is "used" if [it] is available to facilitate the underlying offense, and it is not required that the weapon be actually brandished or fired. One method in which a firearm may be used is to protect the underlying criminal enterprise. Further, a firearm can be used as a device to embolden or lend courage to the actor, or as a device to intimidate the alleged victim.

The written instruction was consistent with the ALR article, and defense counsel did not object.

[¶ 12] On appeal, Mr. Daves maintains that the district court erred by instructing the jury in accordance with the ALR article because a later United States Supreme Court decision, *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), superseded by statute,

---

**1.** The judge had instructed the jury on the definition of "threatens to use" a deadly weapon with regard to the aggravated assault and battery charge.

rejected parts of the definition set out in the article.[2] Because defense counsel did not object to the instruction, we apply our plain error standard of review. "In order to demonstrate plain error, he 'must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it denied him a substantial right to his material prejudice.'" *Dougherty v. State*, 2010 WY 127, ¶ 24, 239 P.3d 1176, 1183 (Wyo.2010), quoting *Creecy v. State*, 2009 WY 89, ¶ 17, 210 P.3d 1089, 1093 (Wyo.2009). In addition, we always apply the following standards to claims of errors in jury instructions:

> When reviewing questions involving jury instructions, we afford the trial court significant deference. Jury "[i]nstructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." We confine our review to a "search for prejudicial error." "[A]s long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found."

*Id.* (citations omitted).

[¶ 13] The alleged error is clearly shown in the record as the transcript includes a reading of the jury question and the supplemental instruction by the district court judge and there are documents in the exhibits folder which mirror the district court's rendition. Turning to the second element of our plain error analysis, we consider whether the district court's instruction violated a clear and unequivocal rule of law. We start with the *Bailey* decision, which considered consolidated appeals of two defendants in different cases—Bailey and Robinson. Both defendants were convicted under 18 U.S.C. § 924(c)(1) for use of a firearm during and in relation to a drug trafficking crime. Bailey was stopped for a traffic infraction and the officers saw him push something between the seat and front console of his vehicle. A resulting search of the passenger compartment turned up 30 grams of cocaine. The § 924(c)(1) conviction was based on a loaded firearm found in the trunk of the car he was

driving. *Bailey*, 516 U.S. at 139, 116 S.Ct. at 503–04. Robinson was convicted under the statute for having a firearm in a locked trunk in a bedroom closet when she sold crack cocaine to an undercover officer. *Id.* at 140, 116 S.Ct. at 504.

[¶ 14] The United States Supreme Court reversed the defendants' § 924(c)(1) convictions, concluding that their actions did not involve "use" of a firearm. In reaching that decision, the court noted that the statute criminalized "carrying" or "using" a firearm during and in relation to any crime of violence or drug trafficking crime. *Id.* at 142–43, 116 S.Ct. at 505. In order to distinguish carrying and using a firearm, the court stated that "use" of a firearm under § 924(c)(1) "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 143, 116 S.Ct. at 505 (emphasis in original). Thus, mere possession of a firearm was insufficient to amount to "use" under the statute. The court rejected a definition of "use" which included having a gun in place "to protect the drugs or to embolden" the defendant. *Id.* at 143–45, 116 S.Ct. at 505–07. However, the court also noted that active employment of a firearm can include many different activities.

> The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

*Id.* at 148, 116 S.Ct. at 508.

[¶ 15] Because the result in *Bailey* was based upon the unique language of § 924(c)(1), the ruling is not binding upon us in interpreting our Wyoming statute. We,

---

**2.** The cumulative supplement (pocket part) to the ALR edition indicated that *Bailey* had changed the law on this issue.

therefore, start with our traditional rules of statutory interpretation.

"In interpreting statutes, we primarily determine the legislature's intent. If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous." We construe together all parts of the statutes in pari materia, and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose.

When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*Merrill v. Jansma,* 2004 WY 26, ¶ 28, 86 P.3d 270, 284–85 (Wyo.2004) (citations omitted).

*Stanton v. State,* 2006 WY 31, ¶ 12, 130 P.3d 486, 491 (Wyo.2006).

[¶ 16] The ordinary and obvious meaning of "use" is "to employ for some purpose, put into service, make use of." Webster's Third New Int'l Dictionary 2524 (2002). The supplemental instruction provided by the district court included this concept. Mr. Daves argues, however, that the instruction expanded the definition of "use" beyond that allowed in *Bailey* to allow the jury to convict him even if they found he merely possessed, or even constructively possessed, the gun without actively employing it in the commission of the predicate felonies. Because there is no statutory definition of "use" applicable to § 6–8–101 and we have not previously interpreted that term in the context of the statute, the district court did not violate a clear and unequivocal rule of law when it instructed the jury. Thus, even if we accept Mr. Daves' argument that the supplemental instruction could be read in a way that did not comport

completely with *Bailey,* we would not conclude that the instruction was clearly erroneous. Furthermore, reading the instruction as a whole, we do not believe that Mr. Daves' concerns are valid. The entire tenor of the instruction indicates that the "use" contemplated by the statute had to be in the context of actually facilitating the crime.

[¶ 17] A review of the evidence presented in this case also demonstrates that Mr. Daves was not prejudiced by the supplemental instruction. The record is clear that he "used" the gun in accordance with both the general meaning of the term and the "active employment" definition approved by the Supreme Court in *Bailey.* While they were in the truck at the access area near the river, Mr. Daves pulled the gun and pointed it at the victim. The victim promised to do whatever he asked. He then forced her to perform oral sex on him while he held the gun in his hand.

[¶ 18] Mr. Daves told the victim that if she tried to escape, he would "put a cap in [her] head ... leav[ing] a hole the size of a coffee mug." He had the gun with him while they were in the motel office, booking a room. Once they were in the motel room, he continued to threaten her with the gun and remind her of its presence. At some point, he put the gun into a case and placed it on a table. However, that did not change the fact that he had consistently threatened to shoot her over the course of the evening. As the Supreme Court stated in *Bailey,* even "the silent but obvious and forceful presence of a gun on a table can be 'use' " as defined in that decision. *Bailey,* 516 U.S. at 148, 116 S.Ct. at 508. The evidence established that Mr. Daves "used" the firearm as contemplated in *Bailey* by actively employing it and making it an operative factor in committing the underlying felonies. In addition, he "used" the firearm in accordance with the plain definition of the term by employing it for the purpose of making the victim submit to his will. Mr. Daves was not, therefore, prejudiced by the district court's instruction on the definition of "used a firearm."

## B. Supplemental Jury Instruction Process

[¶ 19] As we mentioned in the discussion of the first issue, the jury sent a note to the judge asking for additional legal guidance on the definition of "used a firearm." It also sent a second note asking for the legal definition of "unlawfully confined" in relation to the kidnapping charge. The district court discussed both questions with counsel, but Mr. Daves was not present during these discussions. The district court then responded to each question with a written instruction.[3]

 [¶ 20] Mr. Daves claims the district court violated his constitutional right to be present during the supplemental jury instruction proceedings. This argument has two aspects-his right to be present at the jury instruction conference with the judge and counsel and his right to be present when the jury was instructed. The determination of whether Mr. Daves had the right to be present is one of law, *see, e.g., DeMillard v. State,* 2008 WY 93, ¶ 8, 190 P.3d 128, 130 (Wyo.2008); however, that does not completely define our standard of review. Because no objection was lodged to his absence or the method the district court used to instruct the jury, the plain error standard of review applies. *See, Snow v. State,* 2009 WY 117, ¶¶ 24–27, 216 P.3d 505, 513–14 (Wyo. 2009). Under that standard, which we quoted above, the defendant has to demonstrate the record shows a violation of a clear and unequivocal rule of law and such violation denied him a substantial right to his material prejudice. *Dougherty,* ¶ 24, 239 P.3d at 1183.

 [¶ 21] The Sixth Amendment to the United States Constitution, Article 1, § 10 of the Wyoming Constitution and the due process clauses of each guarantee a criminal defendant the right to be present during every critical stage of his trial. *Maupin v. State,* 694 P.2d 720, 722 (Wyo.1985); *Seeley v. State,* 959 P.2d 170, 177 (Wyo.1998). This principle is also confirmed in W.R.Cr.P. 43, which provides in relevant part:

(a) *Presence Required.*—The defendant shall be present at the initial appearance at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

. . . .

(c) *Presence Not Required.*—A defendant need not be present in the following situations:

. . . .

(3) At a conference or argument upon a question of law[.]

 [¶ 22] We start with the first question—whether Mr. Daves had the right to be present during the conference when the attorneys and the judge decided how to respond to the jury's questions. We have unequivocally stated that a defendant's presence is not required during a jury instruction or jury question conference where counsel and the judge are simply discussing questions of law. W.R.Cr.P. 43(c)(3); *Lobatos v. State,* 875 P.2d 716, 724 (Wyo.1994); *Seeley,* 959 P.2d at 177. Thus, the district court did not err by not having him present for the conference.

 [¶ 23] The more substantive question involves the way the judge responded to the jury's question by instructing them in writing, rather than in open court with the defendant present. Wyo. Stat. Ann. § 1–11–209 (LexisNexis 2009)[4] states:

After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. The court may give

---

3. The district court's instruction with regard to the definition of "unlawfully confined" stated: "A confinement is unlawful if it is accomplished by force, threat or deception."

4. Although this statute is found in the Code of Civil Procedure, we have recognized its efficacy in criminal prosecutions, as well. *See, e.g., Heywood v. State,* 2007 WY 149, 170 P.3d 1227 (Wyo.2007); *Hoskins v. State,* 552 P.2d 342 (Wyo.1976).

its recollection as to the testimony on the points in dispute, in the presence of or after notice to the parties or their counsel.

[¶ 24] Under this statute, the judge should have answered the jury's questions in open court rather than responding to them in writing. Moreover, the defendant is entitled to be present when a jury's question on a substantive matter is answered. Answering a jury's question is tantamount to jury instruction. "Jury instruction is generally held to be a point in the criminal proceeding which warrants the presence of the defendant." *Seeley,* 959 P.2d at 177. *See also, Maupin,* 694 P.2d at 723.

[¶ 25] It is clear from the transcript of the conferences and the written instructions that the judge instructed the jurors in writing without bringing them into open court and the defendant, obviously, was not present. This procedure was erroneous. The first two elements of the plain error analysis are, therefore, satisfied. We turn then to the central question, whether Mr. Daves was materially prejudiced by the procedure employed by the district court. We conclude that he was not.

[¶ 26] As we stated, above, the instruction defining "used a firearm" was not clearly erroneous and Mr. Daves has not demonstrated that the district court's definition of "unlawfully confined" was incorrect. Because the jury was not improperly instructed, the likelihood of prejudice resulting from the way the instruction was delivered to the jury is lessened.

[¶ 27] One of the reasons a defendant is entitled to be present when the jury is instructed is to exert a psychological influence on the jury. *Maupin,* 694 P.2d at 723; *Seeley,* 959 P.2d at 179. However, the real danger occurs when the jury is instructed in open court and the defendant is not there, leaving the impression of an empty chair on the jury. *Maupin,* 694 P.2d at 723. That concern is not present when the court instructs the jury in writing. *Seeley,* 959 P.2d at 179. The danger is further mitigated in this case because Mr. Daves was present to exert his psychological influence during all other phases of the trial, including when the

jury returned its verdict, and each juror was polled to confirm that he or she agreed with verdict. *Id.*

[¶ 28] Moreover, this was not an especially close case. The bulk of the evidence was provided by the victim's testimony. As the district court acknowledged during the jury instruction conference, the result turned on whether or not they believed the victim. This factor distinguishes the present case from *Maupin,* 694 P.2d at 723–24, where we reversed the defendant's conviction because the case was close and Mr. Maupin's absence during the latter part of the trial, including closing arguments and when the trial court responded to a jury question, was obviously prejudicial. Unlike in *Maupin,* the record does not disclose that Mr. Daves' presence when the jury was given the supplemental instructions was critical.

## C. Sufficiency of Evidence—Sexual Assault Charges

[¶ 29] Mr. Daves asserts he is entitled to reversal of his four sexual assault convictions because there was not sufficient evidence to support all of the prosecution's theories. Mr. Daves was charged with sexual assault in the first degree under § 6–2–302(a)(ii):

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

. . . .

(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats[.]

He claims that the prosecutor advanced three theories about who he threatened to gain the victim's submission to the sexual assaults—the victim, her boyfriend and Mr. Daves, himself. Mr. Daves argues that because the verdict form was general, it is impossible to tell which theory the jury believed; therefore, under the tenets of *Tanner v. State,* 2002 WY 170, 57 P.3d 1242 (Wyo. 2002), the State has to establish there was

sufficient evidence to support the verdict on all three theories.

[¶ 30] When reviewing a sufficiency of the evidence claim, we apply the following standard:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo.2009), quoting *Martin v. State*, 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo.2007).

*Dawes v. State*, 2010 WY 113, ¶ 17, 236 P.3d 303, 307 (Wyo.2010).

[¶ 31] *Bush v. State*, 908 P.2d 963, 966–67 (Wyo.1995) and *Tanner*, ¶¶ 11–13, 57 P.3d at 1245–46, both concerned charges under the burglary statute, which states: "A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein." Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2009). Under the terms of § 6–3–301(a), there are many ways the crime of burglary may be committed. The information, jury instructions and general verdict forms in *Bush* and *Tanner* failed to specify which aspects of the statute were charged. We stated that when the statute the defendant was charged with violating includes alternatives, the prosecution must either specify which alternative is at issue or must demonstrate that there is sufficient evidence to support each of the alternatives. *Bush*, 908 P.2d at 967; *Tanner*, ¶¶ 11–15, 57 P.3d at 1245–46.

[¶ 32] The elements of sexual assault under § 6–2–302(a)(ii) include that the defendant caused "submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believe[d] that the actor has the present ability to execute these threats." Section 6–2–302(a)(ii). The jury instructions specified that the State was alleging that Mr. Daves caused the victim's submission by "threatening to inflict death or serious bodily injury on anyone." He claims that, because the State submitted evidence and argued that he threatened three different people—the victim, the victim's boyfriend, and himself, it has to establish that there was sufficient evidence on each of the theories. Mr. Daves claims the evidence is insufficient because there was no showing that the victim reasonably believed he had the present ability to execute the threat against her boyfriend and his threats to commit suicide did not satisfy the statutory "anyone."

[¶ 33] The sexual assault statute states that the defendant has committed the crime when he makes a threat against *anyone*. *Adams v. State*, 2003 WY 152, 79 P.3d 526 (Wyo.2003) addressed similar statutory language. Adams was charged with conspiracy to deliver a controlled substance, which required a showing that he agreed with *one or more persons* to commit the crime of delivery of a controlled substance, and delivery of a controlled substance, which required a showing that he delivered a controlled substance to *another person*. *Id.*, ¶ 20, 79 P.3d at 533.

[¶ 34] We rejected Adams' claims that the State was required to prove that he conspired with specific persons and that he delivered the controlled substance to specific persons.

> *Bush* and its progeny do not require that the jury verdict be premised on a finding that Adams conspired with each of the Leibees and Hartmann just because they were all identified in the charging document. Rather, those cases require only that when two separate actions or theories of a crime are specified in the alternative that both of the actions or theories be supported by a sufficiency of the evidence. Here, the jury instruction given required that the jury find that Adams conspired with "another person." In any event, there was sufficient evidence pre-

sented at trial that Adams conspired with each of the Leibees and Hartmann.

Likewise, *Bush* and subsequent cases do not mandate that Adams' delivery conviction be reversed based on his speculation regarding the basis for the verdict rendered. Adams' delivery conviction is sustainable so long as sufficient evidence was presented that he delivered methamphetamine "to another" in May of 2001. In this instance, the record evidences that the delivery charge surrounded Adams' delivery of methamphetamine to Benjamin. Therefore, it is unlikely that the jury's verdict was based on the jury's finding that Adams delivered methamphetamine to Neuman as Adams argues.

*Id.,* ¶¶ 21–22, 79 P.3d at 533.

[¶ 35] Under the circumstances presented here, § 6–2–302(a)(ii) simply required the State to prove that Mr. Daves threatened serious bodily injury or death to "anyone" and the victim reasonably believed he had the present ability to execute those threats. Consistent with *Adams*, the State was not obligated to prove that the threat was directed toward a specific person. As the victim described the events which took place throughout the night, it was clear that Mr. Daves threatened to kill her and, considering that he aimed the gun at her multiple times, she reasonably believed he had the ability to carry through with that threat. In addition, Mr. Daves aimed the gun at himself, causing her to beg him not to kill himself in her presence. He obviously had the present ability to execute that threat as well.

[¶ 36] The victim also testified that Mr. Daves said he was going to kill her boyfriend and demanded she take him to where the boyfriend lived. She refused, so she could not have reasonably believed he had the present ability to execute that threat. Nevertheless, his ability to carry out the threat of seriously injuring or killing either the victim or himself, was sufficient to satisfy the element of "caus[ing] submission of the victim by threat of death [or] serious bodily injury ... to be inflicted on anyone" under § 6–2–302(a)(ii).

## CONCLUSION

[¶ 37] The district court did not commit plain error in its response to the jury's request for a definition of "used a firearm." Although the district court erred by instructing the jury in writing instead of in open court with the defendant present, that error was not prejudicial under the facts of this case. Finally, the evidence was sufficient to support Mr. Daves' convictions on the four counts of sexual assault in the first degree because the State proved the requisite element of causing the victim's submission by threat of death or serious bodily injury to anyone.

[¶ 38] Affirmed.

VOIGT, J., files a specially concurring opinion.

VOIGT, Justice, specially concurring.

[¶ 39] I concur in the majority opinion. I write separately only to mention one other reason that responses to all substantive jury questions should be read to the jury in open court, with the defendant present. If a written response is simply handed to a bailiff for delivery to the jury in the jury room, the record does not reflect whether the instruction was thereafter read or given to each of the jurors by the presiding juror, or even that the presiding juror received the written instruction from the bailiff.