378 S.E.2d 659

**Earl FOSTER, et al.**

v.

**Donnie SUMNER, et al.**

**No. 18681.**

Supreme Court of Appeals of
West Virginia.

March 9, 1989.

---

Donnie Sumner, St. Albans, pro se.

Larry G. Kopelman, Charleston, for appellee.

PER CURIAM:

The Fosters and The Elmores petitioned the Circuit Court of Kanawha County to grant them a right-of-way by prescription over the driveway of their neighbors, the Sumners and to establish the boundary line between their properties. The circuit court ruled in favor of the Fosters and Elmores on both issues. On appeal, the Sumners argue that the circuit court erred in both findings. For the reasons set forth below, we affirm in part and reverse in part the judgment of the circuit court.

The parties are owners of various tracts of land in Penrhyn Park, a very hilly section of Kanawha County.[1] Although the plat of Penrhyn Park delineates numerous streets, alleys and lots, few have been developed and access is a problem. Because of the access problem, in 1971 the Sumners' predecessors in interest built a driveway which removed a widely used path. The driveway, although posted with a "No Trespassing" sign, was open until the Sumners installed a gate in 1984.

The boundary line dispute also arose in 1984 when the Sumners built a fence between their driveway property and the Foster property. The disputed area consists of about 10 feet along Upton Avenue tapering to the alley.[2]

After the gate and the fence were installed, the Fosters and the Elmores, neighbors of the Sumners, petitioned the circuit court to regain use of the driveway to access their properties and to establish the boundary line between the Fosters and the Sumners.[3] The circuit court, sitting without jury, ruled that the Fosters and the Elmores had a prescriptive right-of-way across part of the driveway and the Fosters owned the tract in dispute.

On appeal the Sumners present several assignments of error concerning the circuit court's finding of a prescriptive right-of-way and the Fosters' ownership of the property in dispute. Because we find merit in an assignment of error regarding the prescriptive right-of-way and find no merit in the assignments of error regarding the

1. According to the deeds the "Sumner" property under consideration is owned by Gail Sumner and Dewayne Michael Adkins, her son. Donnie Sumner is the husband of Gail Sumner.

2. A different boundary line dispute between the properties of the Elmores and Kenneth and Greta Mallory, respondents below, was resolved by the trial court in favor of the Elmores. This part of the lower court's holding was not appealed.

3. The original petition sought to have the driveway declared a public easement but, because the evidence presented raised the issue of prescriptive easement, the trial court, correctly, granted leave to amend. See W.Va.R.Civ.P. Rule 15.

property dispute, we reverse in part and affirm in part the circuit court's decision.

## I

The requisites for obtaining an easement by prescription are well settled. The essential elements were reiterated in Syllabus Point 3, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976):

> "The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof." Syllabus pt. 2, *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937).

These essential elements must be shown by clear and convincing proof by the party claiming the easement. In Syllabus Point 1, *Carey v. Campbell*, 170 W.Va. 541, 295 S.E.2d 32 (1982), we stated:

> "The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof." Syl. pt. 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976).

The record does not indicate that the Elmores and Fosters crossed the Sumners' driveway property in an open, continuous and uninterrupted manner, under a *bona fide* claim of right, for a period of ten years. Both the Fosters and Mrs. Elmore testified that they knew the driveway was built and owned by the Sumners or the Sumners' predecessors in interest. Even though the Fosters and the Elmores have other means to reach their property, they used the driveway because it provided easier access. There is no evidence in the record that either the Fosters or the Elmores had a *bona fide* claim of right to use the driveway.

The evidence of use by the Fosters and Elmores over the required ten year period is questionable. Mrs. Elmore testified that

she moved away for 4½ years of the 13 year period between the opening of the driveway in 1971 and the installation of the gate in 1984. Although Mrs. Foster used the driveway every day when she lived "in the trailer on the hill" she moved from the trailer in 1978 to another section of property adjacent to a developed street. Mr. Foster testified that although he had driven over the driveway several times, he routinely used other means of access. Several other persons, mostly members of the Elmore–Foster family, testified about their use of the driveway, some indicating that Mrs. Sumner had given them *permission* to use the driveway. Mrs. Sumner testified that the driveway, when owned by her mother, was used by others without her mother's permission. Mrs. Sumner also said that she cannot see the driveway from her house and, therefore, did not know if the Elmores or Fosters used her driveway. Mrs. Mallory, another neighbor and respondent below, testified that she could see the driveway and could not recall any routine use of the driveway.[4]

We conclude that the record does not contain evidence to establish by clear and convincing proof, an easement by prescription in the Fosters and Elmores.

## II

This case was heard by the circuit judge sitting without a jury. In their appeal, the Sumners claim that the evidence does not support the circuit court's finding regarding the disputed boundary line. In Syllabus Point 2, *Veach v. Day*, 172 W.Va. 276, 304 S.E.2d 860 (1983), we reiterated our often recognized rule:

> "A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this court on appeal unless the evidence plainly and decidedly preponderates against such finding." Syllabus pt. 8, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968).

---

**4.** Mrs. Mallory also testified she did not look at the driveway frequently and did not know if the

Elmores had used the driveway routinely from 1972 to 1984.

**620**

See, *Jenkins v. Jones*, 169 W.Va. 409, 287 S.E.2d 521 (1982); *Town of Bancroft v. Turley*, 170 W.Va. 1, 287 S.E.2d 161 (1981); *Teter v. Teter*, 163 W.Va. 770, 260 S.E.2d 270 (1970).

■ The record shows that two surveys were conducted on the disputed property. The Fosters and the Elmores had a survey conducted by Donald Hayes under the supervision of Roger K. Randolph, PE # 6246. Mr. Hayes explained at great length the methodology he used to determine the boundary lines in Penrhyn Park. Mr. Randolph also testified about his review and supervision of the survey. The Sumners' survey was conducted by Arthur Banks, a registered civil engineer. Mr. Banks testified that he considered the Randolph survey to be inaccurate because of its failure to account for the widening of County Route 12. However, Mr. Hayes testified that the widening of County Route 12 was only one of several factors he considered in determining the boundary lines. The circuit court noted that the controversy about the widening of County Route 12 indirectly affected the boundary line dispute because the disputed line was not located directly on Route 12. In explaining his methodology, Mr. Banks acknowledged that the reducing machine he used to plot his location of the disputed line "could have been wrong." Mr. Banks further acknowledged that without the reducing machine his survey lines would be nearly identical to the Randolph survey lines "according to what was scaled."

We have carefully reviewed the record, and we find evidence to support the trial court's finding regarding the disputed boundary line. Therefore, we conclude that the evidence does not plainly and decidedly preponderate against the trial court's finding that the Randolph survey accurately reflects the boundary line between the Upton Avenue properties of the Fosters and the Sumners.

For the reasons set forth above, the judgment of the Circuit Court of Kanawha County is affirmed in part and reversed in part and the case is remanded for entry of an order consistent with this opinion.

Affirmed in part; Reversed in part; and Remanded.