Robert TENNANT, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–241.

Supreme Court of Wyoming.

July 13, 1989.

---

1. Appellant's brief was due in this court not     later than June 5, 1989.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Lari J. Trogani, Student Intern, Wyoming Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Gerald P. Luckhaupt, and Terry L. Armitage, Asst. Attys. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This is a sufficiency of the evidence bailment embezzlement case involving an elderly veteran and the younger appellant, Robert Tennant (Tennant), age thirty-four. Tennant was assisting a veteran by disposition of his monthly income of about $1,657. For this assistance, Tennant was charged with bailment embezzlement, convicted after a bench trial, and sentenced to a jail term of four-to-six years.

We affirm.

After an acquaintanceship which started when the veteran, Vern Sherman (Sherman), was at a Veterans Administration domiciliary facility in Hot Springs, South Dakota, Sherman followed Tennant to Casper, Wyoming. A routine was thereafter established where Tennant received all of Sherman's monthly income, spent some for Sherman's needs, and expended the balance for himself and his family. Primarily, Sherman "needed" money for cigarettes— about $20 per month. Personal purchases made by Tennant from Sherman's funds included a satellite dish, a 25-inch Magnavox television, a truck, tires for the truck, a waterbed, as well as groceries, plane tickets and numerous other on-going expenditures, including payment of his monthly rent. In essence, all of the money was spent monthly and only a small part for Sherman.

Tennant, who was himself receiving Aid to Families with Dependent Children (AFDC) benefits, came first into investigation by that agency about a joint checking account from which all of Sherman's money was expended. Initially, in addition to the funds received by Sherman, there was also a small Veterans Administration pension received by Tennant that was for a time also automatically deposited into the same bank account. Availability of "other income" was at issue for that supervising agency in conjunction with payment of the family support welfare benefits.

Actually contested within this insufficiency of the evidence appeal is evidence demonstrating a bailment and proof of conversion. Even though questioning bailment and conversion, the fact that Tennant spent essentially all of Sherman's money is not in dispute. The criminal charge defense was essentially a combination of contended gifts and attributed compensation for services provided for the benefit of Sherman. It was in the nature of these events that all of the money came to be spent by either the first arrangement of two-party co-signed checks and then later

by Sherman pre-signing checks after the Department of Public Assistance and Social Services had forced Tennant to remove his name from the bank account. In either case, Tennant had checks pre-executed by Sherman by which bank withdrawals and payments were made.

The complexities of the continuing monthly transactions by which the Sherman funds were spent created issues for resolution of the factfinder—in this case the trial judge. Singularly included was testimony of Sherman that he was told by Tennant that $900 per month of his funds was being paid to the Wyoming Medical Center in Casper on Sherman's unpaid hospital bill. Trial evidence suggested that, in addition to the periods when board and room were provided by Tennant, Sherman only received cigarette money for personal expenditures. Unquestionably, none of these funds were paid to the Casper hospital.[1]

■ A realistic review of the evidence of the case reveals a factual basis sufficient to justify the conviction entered. This court has frequently addressed the standards for evidentiary review and certainty for conviction in appeals which test the sufficiency of the evidence. Recently, in *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989), we summarized:

The rules for our consideration of the constitutional inquiry of sufficiency of the evidence to convict date back to the territorial day case of *Palmerston v. Territory*, 3 Wyo. 333, 23 P. 73 (1890), and are easily stated. In reviewing sufficiency of the evidence for criminal conviction, this court must determine whether, after viewing the evidence and appropriate inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime to have been proven beyond a reasonable doubt. *Corson v. State*, 766 P.2d 1155 (Wyo.1988); *Wells v. State*, 613 P.2d 201 (Wyo.1980).

■ The decision of the trial court constituting a finding of guilt for the offense charged is entitled to the same weight as a jury verdict. *Simmons v. State*, 687 P.2d 255 (Wyo.1984); *Desmond v. Snyder*, 62 Wyo. 478, 174 P.2d 139 (Wyo.1946); *Seep v. Ferris–Haggarty Copper Mining Co.*, 120 C.C.A. 191, 201 F. 893 (C.C.A.Wyo.1912); *Foster v. Sumner*, 378 S.E.2d 659 (W.Va. 1989).

■ The weight of documentary evidence produced by checks drawn on the depository account, confirmed by oral evidence of investigation and examination, and strengthened with AFDC records meets the *Munson* test for evidentiary sufficiency to sustain conviction. Viable evidence was introduced sufficient for the trial court to find the elements of the crime of grand larceny by bailee, W.S. 6–3–402, resulting from Tennant's use of Sherman's money encompassing (1) a crime occurring within Natrona County, Wyoming between the dates of January 1 through October 1, 1987; (2) Tennant was entrusted with the control, care or custody of the money or property of Sherman; (3) he did, with the intent to steal or deprive the owner thereof; (4) convert the money to his use; and (5) in an amount in excess of $500. *United States v. Burton*, 871 F.2d 1566 (11th Cir. 1989).

Tennant's challenge to elements of a criminal offense presented by this appeal for the defense of insufficiency of the evidence are denied bailment and unproven conversion. The mute bank account records of what happened to the monthly income of $1,657 speaks volumes in prac-

---

1. It is interesting how the investigation and prosecution were commenced. A social worker at the Wyoming Medical Center, Lola Reynolds, contacted Vickie Crume, a social worker within the Department of Public Assistance and Social Services, who headed the Natrona County Adult Protection Team. Based on the expressed concern about a possible exploitation status of Sherman, Crume initiated an investigation which moved to the case supervisor for the

AFDC account for Tennant himself and then to the bank account and resulting financial records secured by a search warrant. The trial record also reveals that Tennant had prior problems at the Veterans Administration facility in Hot Springs, South Dakota with staff personnel who had ordered him off of the premises. The exclusion apparently arose from hospital personnel suspicions about Tennant's acquisition of money from patients.

tical and dispositive proof. The trial court was properly entitled to find that Tennant received the money, at least in part, misinformed Sherman about its use, and essentially spent everything for himself and his family. Neither intended gift to disprove actual bailment nor Sherman's actual benefit in usage to disprove conversion, which constituted the asserted defenses, were sufficiently placed in evidence to require this court to reverse the factfinder under our standard of review. *Wells v. State,* 613 P.2d 201 (Wyo.1980). We need neither to distinguish the excellent authorities cogently recited by Tennant nor review plain error questions argued by the State to enunciate a sufficiency of the evidence appeal that fails on the well-presented factual panorama.

We affirm the conviction and sentence.