2009 WY 89

George CREECY, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. S–08–0211.

Supreme Court of Wyoming.

July 10, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender, PDP; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   A jury convicted George Creecy of aggravated assault for intentionally and knowingly causing bodily injury to Dale Chavez with a knife.  Mr. Creecy appealed, claiming the district court erred when it instructed the jury that he had a duty to retreat before using deadly force in self defense.  We affirm.

## ISSUE

[¶ 2]   Mr. Creecy presents the issue for our determination as:

Did the district court err when it instructed the jury on a defendant's duty to retreat before the use of deadly force is justified, when such instruction is not applicable in the case and only serves to confuse or mislead the jury?

The State rephrases the issue as:

Is Instruction No. 18 a proper statement of Wyoming law and, if it is not objected to at trial, did it become the law of the case and a question of fact for the jury?

## FACTS

[¶ 3]   In March of 2008, the Uinta County Attorney's office filed an information charging Mr. Creecy with one count of aggravated assault in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) and (b) (LexisNexis 2007).  In her affidavit supporting the information, police officer Kathryn M. Adams stated that she was dispatched to John's Bar in Lyman, Wyoming on February 20, 2008, at approximately 2:00 a.m. in response to a reported stabbing.  She found Dale Chavez sitting in a vehicle parked in front of the bar with a woman who was applying pressure to his chest with her hands.  The woman told Officer Adams that Mr. Chavez was bleeding profusely from his chest.  Another woman standing next to the vehicle said that Mr. Creecy had stabbed Mr. Chavez and was inside the bar.

[¶ 4]   Officer Adams found Mr. Creecy seated on a stool next to the bar.  His left eye was swollen and black and blue and he had blood around his mouth.  Witnesses informed the officer that Mr. Creecy and Mr. Chavez had gotten into a fight earlier in the evening. At approximately 1:30 a.m. they got into another fight during which Mr. Chavez punched Mr. Creecy in the face with his fist a couple of times.  One witness said Mr. Creecy pulled a knife and she grabbed it from him.  Mr. Chavez left the bar but returned and the two men began fighting again.  Mr. Creecy had another knife and stabbed Mr. Chavez.

[¶ 5]   An ambulance crew called to the scene advised Officer Adams that Mr. Chavez had three stab wounds, one in the upper right chest and two in the left upper abdomen.  Officers found two 4 1/2″ folding pocket knives in Mr. Creecy's pockets.  One of

the knives had what appeared to be blood on it.

[¶ 6]  Officer Adams arrested Mr. Creecy for aggravated assault.  Because of the significant injuries to his face, she directed that he be taken to the hospital for treatment before being transported to jail.  At the hospital, it was determined that he had a broken nose and his left orbit was fractured.  Cuts inside his lip and underneath his eye required stitches and he had multiple lumps and abrasions on his forehead and face.

[¶ 7]  Mr. Creecy pleaded not guilty to the aggravated assault charge and the district court convened a trial.  The witnesses who had been present at the bar on the night of the fight gave differing accounts of what happened.  Mr. Chavez testified that he confronted Mr. Creecy shortly after he arrived at the bar because he had been told Mr. Creecy had been making derogatory racial comments.  Mr. Chavez grabbed Mr. Creecy by the shirt collar and told him he did not want to hear any more such comments.  The bartender intervened, separated them and later persuaded Mr. Chavez to apologize to Mr. Creecy.

[¶ 8]  Mr. Chavez testified that later in the evening the bartender left and he went behind the bar to get another beer.  He said Mr. Creecy grabbed him and told him that he was in charge while the bartender was gone.  Mr. Chavez testified the next thing he remembered was the woman he was with breaking him and Mr. Creecy apart after a fight.  He said a man he was with at the bar persuaded him to go home.  He testified that he was leaving the bar when Mr. Creecy lunged at him and another fight broke out.  Someone broke up the fight and Mr. Chavez left the bar.  He realized he was bleeding as he was walking down the road.

[¶ 9]  Mr. Creecy testified that soon after he arrived at the bar that night Mr. Chavez asked if he could talk with him.  They went into a separate room and Mr. Chavez asked Mr. Creecy if he had a problem with Mexicans.  Mr. Creecy tried to explain that he did not, but Mr. Chavez grabbed him by the collar and told him he did not appreciate his comments.  The bartender came into the room and broke up the confrontation.  Later, the bartender brought Mr. Chavez over to Mr. Creecy to apologize.

[¶ 10]  Mr. Creecy testified that the bartender left later in the evening to take someone home and asked him to watch the bar.  As soon as the bartender left, Mr. Chavez went behind the bar toward the beer cooler.  Mr. Creecy asked him where he was going and Mr. Chavez punched him.  Mr. Creecy testified that Mr. Chavez "pummeled" him until someone pulled Mr. Chavez off of him.  As Mr. Chavez was being pulled away, he kicked Mr. Creecy in the chin.

[¶ 11]  Mr. Creecy testified that after the fight was broken up, he took two knives out of his jacket pocket because he "knew [Mr. Chavez] was coming back."  Two women were trying to persuade him to put the knives away when suddenly Mr. Chavez was "on him."  The knives were still in his hands, he moved his arms to defend himself and then Mr. Chavez was gone.

[¶ 12]  Rosalie Mansir testified that she was at the bar with a friend on the night of the fight.  She testified Mr. Chavez was being very loud, banging his fists on the bar and swearing a lot.  She said Mr. Chavez came across the bar behind her and jumped on Mr. Creecy.  Mr. Creecy was down on the ground, both men were hitting each other and other bar patrons tried to separate them.  Someone escorted Mr. Chavez out of the bar.  She testified that Mr. Creecy was "a bloody mess" and she got him a wet towel for his face.  Mr. Creecy showed her two knives and she told him to put them away.  A few minutes later Mr. Chavez rushed through the door and headed for Mr. Creecy.  The two men lunged at each other and began to fight again.  Other patrons managed to separate them and Mr. Chavez left.

[¶ 13]  Adriana Castle testified that she went to the bar with Mr. Chavez that night.  She was in the back room playing pool when the fight broke out.  She saw the men pushing each other and arguing and ran to stop them.  When she got to them, Mr. Creecy was on the floor on his back and Mr. Chavez was over the top of him.  They were punching each other.  She pulled Mr. Chavez off Mr. Creecy and pushed him away.  She told

Mr. Creecy to stop and tried to calm him down. As she was talking to him he pulled out a knife and held it up. She grabbed it from him and tossed it on the bar. She turned to check on Mr. Chavez and Mr. Creecy pulled another knife from his coat pocket. Mr. Chavez was already moving toward them, he pushed her out of the way and the two men began fighting again. She grabbed Mr. Chavez and pushed him toward the door. Outside, she told him to go home.

[¶ 14] Colby Gertsch testified that he went to the bar to meet friends, including Mr. Chavez. He did not see the fight break out but heard the commotion and turned to see Mr. Chavez standing over Mr. Creecy, hitting him. He testified that Mr. Chavez was getting in some pretty good blows and Mr. Creecy was not really fighting but in more of a defensive position. Ms. Castle broke up the fight and Mr. Chavez came and sat next to him. Mr. Gertsch tried to calm him down and convince him to go home. He and Mr. Chavez started to leave but when they reached the end of the bar Mr. Creecy came after Mr. Chavez. Another fight broke out with Mr. Creecy ending up back on the floor. Mr. Chavez grabbed a bar stool, went to swing it at Mr. Creecy, but hit Mr. Gertsch with it instead. Mr. Gertsch put his arms around Mr. Chavez and got him outside.

[¶ 15] Mr. Creecy's defense at the trial was that his actions were necessary and reasonable to defend himself. Defense counsel submitted four jury instructions related to his self defense claim:

### INSTRUCTION NO. O

One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.

If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.

### INSTRUCTION NO. P

It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

### INSTRUCTION NO. Q

To justify acting in self-defense, it is not necessary that the danger was real, or that the danger was impending and immediate, so long as the defendant had reasonable cause to believe and did believe these facts. If these two requirements are met, acting in self-defense is justified even though there is no intention on the part of the other person to do the defendant harm, nor any impending and immediate danger, nor the actual necessity for acting in self-defense.

### INSTRUCTION NO. R

Self-defense is an issue in this case. The burden is on the State to prove that the defendant did not act in self-defense. Unless the State proves beyond a reasonable doubt that the defendant did not act in self-defense, you shall find the defendant not guilty of the crime of Aggravated Assault and Battery.

The district court gave instructions O and R exactly as the defense submitted them. The district court did not give instructions P and Q but gave the following instruction:

### INSTRUCTION NO. 15

If the defendant had reasonable grounds to believe and did believe that he was in imminent danger of serious bodily harm from which the defendant could be saved only by using deadly force against an assailant, the defendant had the right to use deadly force in self-defense. "Deadly force" means force which is likely to cause death or serious bodily harm.

The circumstances under which the defendant acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the assailant was about to do serious bodily harm to the defendant. The danger must have been apparent, present and imminent or must have appeared to be so under the circumstances.

If the defendant believed that he was in imminent danger of serious bodily harm, and that deadly force was necessary to repel such danger, and if a reasonable person in a similar situation seeing and knowing the same facts would be justified in believing that he was in similar danger, the defendant would be justified in using deadly force in self-defense. The defendant would be justified even though the appearance of danger later proved to be false and there was actually neither purpose on the part of the assailant to do the defendant serious bodily harm nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense. If the person so confronted acts in self-defense upon such appearance of danger from honest belief, the right of self-defense is the same whether the danger is real or merely apparent.

[¶ 16] The jury found Mr. Creecy guilty of aggravated assault. The district court sentenced him to a term of 12 to 18 months in prison with credit for the 33 days he served while awaiting trial.

## STANDARD OF REVIEW

[¶ 17] Mr. Creecy asserts the district court erred in instructing the jury concerning the applicable law. He did not object during trial to the manner in which the district court instructed the jury; therefore, we review his claim for plain error. *Granzer v. State*, 2008 WY 118, ¶ 18, 193 P.3d 266, 272 (Wyo.2008). Under the plain error standard, Mr. Creecy must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it denied him a substantial right to his material prejudice. *Id.*, ¶ 19, 193 P.3d at 272. When claimed error is not preserved by proper objection, the appellant has the burden to establish that he was prejudiced. *Id.*

[¶ 18] Although our review is for plain error, we also apply the following standards:

When reviewing questions involving jury instructions, we afford the trial court significant deference. Jury "[i]nstructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." We confine our review to a "search for prejudicial error." "[A]s long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found."

. . . .

"[A] defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury of the theory or defense and if competent evidence exists which supports the law expressed in the instructions." However, we have also noted that "[n]ot every instruction must be given simply because there is a claim that it incorporates a theory of the case." A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events. Additionally, "instructions not based on the evidence can be properly refused."

*Farmer v. State*, 2005 WY 162, ¶¶ 20, 23, 124 P.3d 699, 706–07 (Wyo.2005) (citations omitted).

## DISCUSSION

[¶ 19] Mr. Creecy contends the district court improperly instructed the jury concerning Wyoming law when it gave the following instruction:

### INSTRUCTION NO. 18

Even if the defendant had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the

danger only if he retreated as far as he safely could do before using deadly force. The law requires a person to retreat rather than to use deadly force in self-defense if there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased, by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense.

Mr. Creecy argues this instruction misinformed the jury that in order to claim self defense, Wyoming law required him to prove either that he retreated as far as he safely could or there was not a convenient mode of retreat after the first physical altercation. Mr. Creecy contends that is not the law in Wyoming; rather, under Wyoming law, a person is not required to flee a location where he has a legal right to be in order to claim self defense.

[¶ 20] The State responds that Instruction 18 is an accurate statement of the law. The State asserts that rather than requiring a defendant to retreat, the instruction properly informed the jury that a defendant must retreat when retreat is reasonable under the circumstances. The State further contends that the instruction did not tell the jury that the law required Mr. Creecy to leave the bar, but only that he must back away from the fight or move to another part of the bar.

[¶ 21] Reviewing Mr. Creecy's claim for plain error, we find that although the record clearly reflects that the district court gave Instruction 18 to the jury, Mr. Creecy has not shown that the instruction violated a clear and unequivocal rule of law or that giving it denied him a substantial right to his material prejudice. Instruction 18 is found in the Wyoming Criminal Pattern Jury Instructions. W.Cr.P.J.I. 8.08 (2004). The same instruction was given and approved in *Harries v. State*, 650 P.2d 273, 275–76 (Wyo. 1982); *Garcia v. State*, 667 P.2d 1148, 1151 (Wyo.1983); and *Small v. State*, 689 P.2d 420, 423 (Wyo.1984).

[¶ 22] In *Harries*, a fight broke out in a bar and moved out onto the street. Someone hit the defendant as he went through the door and he ran to his friend's truck where he found a gun under the seat. He cocked the gun, pointed it at another patron's chest and ordered him back into the bar. That person stepped aside and grabbed the gun and it went off. A jury convicted the defendant of aggravated assault with a deadly weapon, rejecting his claim of self defense. He did not directly challenge the jury instructions but claimed the evidence was not sufficient to support the verdict. This Court reviewed the self defense instructions given to the jury, including one identical to Instruction 18 at issue in the present case, and concluded in relevant part:

> The jury could reasonably find beyond a reasonable doubt that appellant could have then left the scene or that he could have just sat in the pickup. Even if the jury found that defendant properly armed himself in reasonable anticipation of an attack upon him, it could reasonably find beyond a reasonable doubt that he failed to retreat "as far as he safely could" before using force in self-defense.

*Harries*, 650 P.2d at 276.

[¶ 23] In *Garcia*, 667 P.2d at 1151, the defendant stabbed the victim after an evening of altercations between the two. At the defendant's trial on charges of second degree murder, the district court gave the same instruction. The defendant had objected and offered the following alternative instruction:

> The defendant has a right to go where he will. If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of serious bodily harm, and that deadly force was necessary to repel such danger, he was not required to retreat from a place where he is legally entitled to be. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.
>
> The defendant had no duty to retreat if he had even the slightest doubt that he could retreat in complete safety. Even the slightest doubt, if reasonable, was enough

to justify his standing his ground. In determining whether the defendant's doubt was reasonable you may make every allowance for the situation in which Steve Garcia was placed by [the victim].

*Id.* This Court found no error in the district court's ruling on the instructions, stating:

This court has addressed the so-called "duty to retreat" on several occasions. In general, it can be concluded from these prior discussions that an individual who is without fault in bringing about the incident in which he kills his assailant need not restrict his freedom of movement to go where he has a right to be. The "duty to retreat," where it prevails, is applied in cases of actual assault. Under the circumstances of this case the following comment is instructive:

" * * * [A] person who provokes or brings on the difficulty in which he kills his assailant cannot invoke the right of self-defense, unless he in good faith retreats as far as he safely can, making that fact manifest to his adversary. * * * " *State v. Flory*, [40 Wyo. 184, 276 P. 458, 462 (Wyo.1929)].

Given these prior adjudications with respect to self-defense, the law in the State of Wyoming requires that prior to resorting to deadly force a defendant has a duty to pursue reasonable alternatives under the circumstances. Among those reasonable alternatives may be the duty to retreat.

*Id.* at 1153 (citations omitted).

[¶ 24] In *Small*, 689 P.2d 420, the victim and a third party fought and the victim was badly beaten. The third party left the scene and the defendant approached the victim. A fight erupted between them and the defendant got on top of the victim and kicked him in the head and face. The fight subsided but the defendant remained at the scene quarreling with the victim. The two resumed fighting and the defendant threw the victim to the ground, causing him to hit his head on the pavement. He did not move after that and died as a result of massive head trauma induced by a blunt object.

[¶ 25] The district court gave the same instruction given in *Garcia* and Mr. Creecy's case. The defendant objected and offered the following substitute instruction, which the court refused:

You are instructed that a person who provokes or brings about an incident in which he kills his assailant cannot invoke the right of self-defense, unless he, in good faith, retreats as far as he safely can, and making that fact manifest to his adversary.

However, an individual who is without fault in bringing about the incident in which he kills his assailant need not restrict his freedom of movement to be where he has a right to be, and he need not retreat.

Prior to resorting to deadly force a defendant, if he is the instigator of a fight, has a duty to pursue reasonable alternatives under the circumstances, one of which may be the duty to retreat.

If you find that Benjamin Small was the instigator of a fight with [the victim], then Benjamin Small had a duty to retreat as he safely could before using deadly force in self-defense.

On the other hand, if you find that Benjamin Small was not the instigator of a fight with [the victim], Benjamin Small had no duty to retreat before resorting to deadly force in self-defense provided that the other elements of the right of self-defense existed at the time as stated in previous instructions.

*Id.* at 424. On appeal, Mr. Small relied on *Garcia* as support for his proposed instruction. This Court held that the proposed instruction was not appropriate because no evidence was presented at trial indicating that the victim instigated the fight; rather, the evidence pointed to Mr. Small as having been the aggressor. *Id.*

[¶ 26] Given this precedent, Mr. Creecy cannot show that the district court's decision to give Instruction 18 violated a clear and unequivocal rule of law. To the contrary, Wyoming law clearly establishes that the instruction may be appropriate in cases in which the defendant claims that he acted in self-defense. We find nothing in the record supporting Mr. Creecy's claim that the instruction was not appropriate under the particular circumstances of his case.

[¶ 27] Despite the established precedent, Mr. Creecy argues that it was plain error to give the instruction in his case because the evidence clearly showed that he was not the aggressor and he did not, therefore, have a duty to leave. Mr. Creecy contends that he was prejudiced because the instruction erroneously conveyed to the jury that he did have a duty to leave the bar after Mr. Chavez pummeled him and that he was not within his rights to stay and prepare to defend himself. He asserts the prosecutor furthered the instructional prejudice by telling the jury in closing argument that he had a duty to leave the bar and, failing that duty, could not claim that he acted in self-defense. He points to the following comments made by the prosecutor:

> The right to use force ends when a reasonably prudent person would no longer perceive that danger. [Mr. Creecy] had a duty to retreat. In the testimony that we heard, he had somewhere between two and fifteen minutes between the first altercation and the second.
>
> I've just paused for fifteen seconds. In that time, he had an opportunity to leave the bar. He had an opportunity to call for help. He had an opportunity to ask someone for help.
>
> . . . .
>
> When the danger ceased, when the immediate danger ceased, he had a duty to not use self-defense any longer; and, in fact, he had a duty to retreat.

[¶ 28] The difficulty with Mr. Creecy's argument is that evidence was presented from which the jury reasonably could have concluded that after Mr. Chavez pummeled him, he armed himself with a knife and attacked Mr. Chavez as he was leaving the bar. Both Mr. Chavez and Mr. Gertsch testified that is what happened. While there was contrary evidence indicating that the stabbing occurred after Mr. Chavez attacked Mr. Creecy, it is not this Court's function to second guess jury determinations as to credibility. We have consistently held that it is the jury's responsibility to weigh the evidence, assess the credibility of the witnesses and resolve conflicts in the evidence, and we will not substitute our judgment for that of

the jury. *Magallanes v. State,* 2006 WY 119, ¶ 11, 142 P.3d 1147, 1151 (Wyo.2006).

[¶ 29] Mr. Creecy has failed to establish that plain error occurred when the district court gave Instruction 18 concerning the "duty to retreat." Given Wyoming precedent, he has not shown that the instruction violated a clear and unequivocal rule of law. Given the conflicting evidence as to who the aggressor was when Mr. Chavez was stabbed, Mr. Creecy also has failed to show that giving the instruction denied him a substantial right to his material prejudice.

[¶ 30] Affirmed.