2010 WY 113

**Richard William DAWES, a/k/a Richard William Kemp, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0211.

Supreme Court of Wyoming.

Aug. 6, 2010.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶1] Mr. Dawes appeals from the judgment and sentence entered by the district court after a jury found him guilty of larceny by bailee for converting to his own use funds his employer had placed in a Wyoming checking account. In various ways, Mr. Dawes challenges the district court's authority to try him in Wyoming because he had never been in the state until he was extradited to face the charge in this case. He also argues that, as a matter of law, his conviction was improper because he was listed as a joint owner on the account and could not, therefore, be convicted for converting money that belonged to him. In a related issue, Mr. Dawes claims that the district court committed plain error in its response to the jury's question about the definition of the "owner" of the money.

[¶2] We conclude that Mr. Dawes was properly charged and tried in Wyoming because he converted funds located in this state. In addition, the district court correctly allowed the jury to determine, as a matter of fact, whether the funds in the account belonged to Mr. Dawes or his employer. Finally, the district court did not err when it responded to the jurors' question by telling them that the determination of who owned the money was a factual issue for them to decide.

[¶3] We affirm.

## ISSUES

[¶4] Mr. Dawes presents several issues on appeal:

I.  Was it error for the court to entertain subject matter jurisdiction over an alleged crime that occurred outside the boundaries of the State of Wyoming?

II.  Did the trial court abuse its discretion by denying Mr. Dawes' motion for judgment of acquittal in light of the fact that there was insufficient evidence to prove the requisite elements of the charged crime of larceny by bailee and the variance between the information and proof was prejudicial to Mr. Dawes?

III.  Did the trial court abuse its discretion by denying Mr. Dawes' motion to dismiss for defects in the institution of the prosecution?

IV.  Did the district court commit plain error in its response to the jury's note?

Although phrased differently, the State's statement of the issues is similar.

## FACTS

[¶5] Mr. Dawes was a California resident, and the victim, Mary Storer, lived in California during the winters. In the 1990s, Ms. Storer employed Mr. Dawes to pay her household bills. The original arrangement was for Ms. Storer to collect the bills and give them to Mr. Dawes, who took them home, made out the checks and returned them for her signature.

[¶6] Ms. Storer also owned a home in Saratoga, Wyoming, and spent summers there. Payments were often late when Ms. Storer was in Saratoga because it took so much time to transfer the paperwork between California and Wyoming. To remedy the situation, Ms. Storer opened a checking account at Rawlins National Bank in Carbon County, Wyoming. The account listed Ms. Storer and Mr. Dawes as joint owners with right of survivorship and required only one signature to negotiate checks. Ms. Storer transferred $5,000 per month into the account, although the amount was later increased to $10,000 per month when Mr. Dawes told Ms. Storer that the original amount was insufficient to cover her bills. The address on Ms. Storer's bills was changed so they went directly to Mr. Dawes.

* Chief Justice at time of oral argument.

He then paid the bills and provided her with a monthly report.

[¶ 7]  In 2008, the bank notified Ms. Storer that the account was overdrawn.  When she investigated the incident, she discovered many unauthorized transactions.  The State charged Mr. Dawes with larceny by bailee in violation of Wyo. Stat. Ann. § 6–3–402(b) (LexisNexis 2009).[1]

[¶ 8]  Mr. Dawes filed two motions to dismiss.  The first challenged the district court's subject matter jurisdiction on the basis that Mr. Dawes had never been to Wyoming before being extradited on the larceny charge and he had not committed any crime in Wyoming.  He argued in his second motion that, as a matter of law, he could not be convicted of larceny by bailee because he was a joint owner of the account.  The district court denied both motions.

[¶ 9]  At trial, the State presented evidence showing that between 2006 and 2008, Mr. Dawes wrote more than $195,000 in checks on the joint account for his personal expenses without Ms. Storer's approval.  The jury found Mr. Dawes guilty of larceny by bailee, and the district court sentenced him to serve two to six years in prison.  Mr. Dawes appealed.

## DISCUSSION

### 1.  Subject Matter Jurisdiction

[¶ 10]  Jurisdiction is a question of law we consider *de novo*, without regard for the district court's determination.  *Innis v. State*, 2003 WY 66, ¶ 8, 69 P.3d 413, 417 (Wyo.2003).  Subject matter jurisdiction is "essential to a prosecution for a criminal offense" and, unlike personal jurisdiction, it cannot be waived.[2]  *Rios v. State*, 733 P.2d

242, 244 (Wyo.1987).  *See also, Taylor v. State*, 658 P.2d 1297, 1300 n. 3 (Wyo.1983).

[¶ 11]  Mr. Dawes maintains that the district court did not have subject matter jurisdiction to prosecute him for larceny by bailee because he had never been to Wyoming and did not commit any part of the charged crime in Wyoming.  Our case law reveals that the scope of a Wyoming district court's criminal jurisdiction is broader than Mr. Dawes acknowledges.

[¶ 12]  In *Rios*, this Court considered the defendant's claim that he could not be prosecuted in Wyoming for interference with child custody because, at the time of the crime, neither the child nor the defendant had ever been to Wyoming.  *Id.* at 243.  We stated that, under the common law, " 'a state has power to make conduct or the result of conduct a crime if the conduct takes place or the result happens within its territorial limits.' " *Id.* at 245, quoting W. LaFave & A. Scott, *Criminal Law* § 17 at 118 (1972).  We noted that many states have exercised criminal subject matter jurisdiction beyond the common law precepts and held that they have jurisdiction to prosecute acts which occur outside the state if the criminal act "produced an effect within the state." *Rios*, 733 P.2d at 249.  Many states also exercise jurisdiction if any element of the crime occurs within the state.  *Id.* at 247–48.  Applying the "effect within the state" rationale to the facts presented in *Rios*, we concluded that Wyoming had jurisdiction to prosecute Mr. Rios for interference with child custody even though neither he nor the child had been to Wyoming.  The mother, who was the custodial parent, was a resident of Wyoming and was entitled to enforce the child custody decree in Wyoming courts.  Thus, the effects

---

1.  Section 6–3–402(b) states:
    (b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

2.  The district court obtained personal jurisdiction over Mr. Dawes when he was extradited to Wyoming.  We explained in *Rios v. State*, 733 P.2d 242, 244 (Wyo.1987):

    A state obtains personal jurisdiction over an accused by his physical presence before the court without regard to the manner in which that presence was obtained.  Even in cases in which extradition is pursued, the rule is that once a fugitive has been brought within the custody of a demanding state through extradition he cannot attack the legality of that extradition or the personal jurisdiction of the court over him.
    (Citations omitted).

of the defendant's criminal conduct, i.e., refusing to return the child to the custodial parent, were felt in Wyoming. *Id.* at 250.

[¶ 13] Another case with a similar result is *Hopkinson v. State*, 632 P.2d 79, 100 (Wyo. 1981). We concluded that Wyoming had jurisdiction to prosecute the defendant for accessory to murder even though he was in California when the crime was committed and his only connection to Wyoming involved numerous phone calls to people in this state communicating his instructions to murder the victim. *Id.*

[¶ 14] More recent cases have shown the breadth of Wyoming criminal jurisdiction over drug transactions. In *Marquez v. State*, 12 P.3d 711, 715 (Wyo.2000), we held the district court had jurisdiction over drug conspiracy charges because the defendant had conspired to deliver drugs to Wyoming, even though he entered into the conspiracy in New Mexico and was arrested in Colorado. Looking at federal precedent, we ruled that "the trial courts of Wyoming have subject matter jurisdiction over drug conspiracies when the conspirators intend for the conspiracy to have an effect within the state of Wyoming." *Id.* Because Mr. Marquez had conspired to deliver controlled substances to Wyoming, he fell within Wyoming's jurisdiction regardless of the fact that he had not actually entered the state before he was arrested. *Id. See also, Innis*, ¶ 8, 69 P.3d at 417 (holding that the district court had jurisdiction over the drug conspiracy charge because the conspirators came to Wyoming to purchase an ingredient used to manufacture methamphetamine).

[¶ 15] Applying this precedent, we conclude that there were multiple bases for the district court to conclude it had subject matter jurisdiction over the larceny by bailee charge against Mr. Dawes. First, the evidence established that Mr. Dawes wrote the unauthorized checks on a Wyoming bank account, effectively converting money located in Wyoming and depriving a Wyoming victim of her money. Similar to *Hopkinson*, Mr. Dawes' actions outside the state resulted in a crime within the state. Under common law principles, the district court was entitled to exercise jurisdiction because the criminal

conduct and its result took place in Wyoming. Moreover, as in *Rios* and the drug conspiracy cases, the effects of Mr. Dawes' criminal activity were felt in Wyoming. The district court properly concluded that it had jurisdiction and denied Mr. Dawes' motion to dismiss the larceny by bailee charge.

**2. Variance Between the Charging Documents and Trial Proof/Sufficiency of the Evidence**

[¶ 16] In a somewhat confusing argument, Mr. Dawes asserts that there was an unconstitutional variance between the charging documents, jury instructions and the evidence presented at trial concerning the location of the crime. He further claims that the State failed to prove an essential element—that the crime occurred in Wyoming.

[¶ 17] Because Mr. Dawes' argument raises the constitutional issue of variance and questions the sufficiency of the evidence, we must apply both relevant standards of review. The question of whether there was a variance between the charged crime and the proved crime implicates constitutional notice requirements, and our review is *de novo. Spagner v. State*, 2009 WY 12, ¶ 14, 200 P.3d 793, 800 (Wyo.2009). In considering the sufficiency of the evidence to sustain a jury's conviction, we apply the following standard:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo.2009), quoting *Martin v. State*, 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo.2007).

[¶ 18] A variance occurs when "the evidence presented at trial proves facts dif-

ferent from those alleged in the information or indictment." However, reversal is not required unless the defendant "could not have anticipated from the indictment or information what evidence would be admitted at trial, or the conviction would not bar subsequent prosecution." *Spagner,* ¶ 15, 200 P.3d at 800.

[¶ 19]   The information in the case at bar stated in relevant part:

COMES NOW [Prosecutor] ... and by the authority of the State of Wyoming, informs the Court and gives the Court to understand that the defendant, [Mr. Dawes], by and between the 1st day of January 2006 and the 3rd day of October 2008, in the County of Carbon, in the State of Wyoming, did commit the crime of Larceny by Bailee, in that said Defendant, being a bailee, entrusted with the control, care or custody of the money of another, to wit: [Ms. Storer], did, with the intent to steal or deprive the owner of the property, convert the property to his own or another's use, all in violation of § 6–3–402(b), W.S.2008.   The felony provisions of 6–3–402[c](i)[,] W.S.2008 apply.

[¶ 20]   Instruction No. 6 set out for the jury the elements of the larceny by bailee charge against Mr. Dawes:

The elements of the crime of **Larceny by Bailee,** as charged in this case, are:

1. On or between January 1, 2006, and October 3, 2008,
2. In Carbon County, Wyoming,
3. The Defendant Richard W. Dawes,
4. While a bailee entrusted with the control, care, or custody of money, and
5. With intent to steal or deprive the owner of the money,
6. Converted the money to his own use, and
7. The value of the money converted was $1,000.00 or more.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any

of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

As is apparent, the information and jury instructions did not vary; they contained the same elements.   Mr. Dawes was not subjected to an unconstitutional variance.

[¶ 21]   Mr. Dawes maintains, nevertheless, that his prosecution was flawed because both the information and the jury instruction failed to allege that Mr. Dawes intended for his actions to have an effect in Wyoming. He insists that his circumstance is analogous to *Estrada–Sanchez v. State,* 2003 WY 45, 66 P.3d 703 (Wyo.2003).   In that case, two women visited Mr. Sanchez in California and obtained methamphetamine from him, which they brought to Wyoming.   As a result, Mr. Sanchez was charged with drug conspiracy charges in Wyoming.   *Id.,* ¶ 4, 66 P.3d at 706.

[¶ 22]   In response to Mr. Sanchez's challenge to the district court's jurisdiction, we reiterated that Wyoming courts have subject matter jurisdiction over drug conspiracies when the conspirators intend for the conspiracy to have an effect within Wyoming.   *Id.,* ¶ 7, 66 P.3d at 707.   Nevertheless, we reversed Mr. Sanchez's conviction because there was a fatal variance between the charging document and the trial evidence and jury instructions.   The information charged Mr. Sanchez with conspiring in Park County to commit an offense within or outside of the State of Wyoming; however, it did not specifically charge that the conspiracy was intended to have an effect in Wyoming.   *Id.,* ¶¶ 9, 15, 66 P.3d at 708–09.   Unlike the information, the jury instructions stated that conviction was appropriate if the evidence proved that Mr. Sanchez entered into a conspiracy intended to have an effect in Wyoming.   *Id.,* ¶ 7, 66 P.3d at 707.   Thus, a fatal variance occurred which required reversal of Mr. Sanchez's conviction.

[¶ 23]   As we have already explained, there was no such variance in this case; the information and jury instructions were substantively identical.   Moreover, as we described in the preceding section, the evidence established that Mr. Dawes wrote unauthorized checks in California which removed

money from an account located in Wyoming. Under these circumstances, there was sufficient evidence for the jury to conclude that the conversion occurred in Carbon County, Wyoming.

[¶ 24] Mr. Dawes apparently maintains that the State was also required to prove he formed his intent to commit the crime in Wyoming and that was impossible since he had never been to this state before these charges were brought. Consistent with § 6–3–402(b), the district court instructed the jury to determine whether Mr. Dawes had the intent to steal or deprive Ms. Storer of the money. Given that the evidence established that the conversion actually took place in Wyoming, neither § 6–3–402 nor common law jurisdictional concepts required that the State prove where Mr. Dawes formed his criminal intent. Under these circumstances, the evidence was sufficient to establish the location of the crime.

### 3. Effect of Joint Ownership of Account

[¶ 25] Mr. Dawes claims that the district court erred by refusing to dismiss the charge because a joint owner of an account cannot be a bailee and, accordingly, cannot be charged with larceny by bailee for removing money from the account. The issue of whether a joint owner may be charged with larceny presents a question of law which we review *de novo. See, Smith v. State,* 2009 WY 2, ¶ 52, 199 P.3d 1052, 1067 (Wyo.2009); *Follett v. State,* 2006 WY 47, ¶ 10, 132 P.3d 1155, 1159 (Wyo.2006).

[¶ 26] The district court instructed the jury that, in order to find Mr. Dawes guilty of larceny by bailee, it had to determine that he was a bailee of the funds. Jury Instruction No. 7 provided the jury with the following definition of bailee: " 'Bailee' means a person, other than the owner of money, who rightfully possesses the money."

[¶ 27] Mr. Dawes maintains that he was a joint owner of the account and could not, as a matter of law, be considered a bailee. 48A C.J.S. *Joint Tenancy* § 25 (2010) states:

In general, the rights of the parties to joint bank accounts are to be determined by the rules of contract law, and in deter-

mining such rights the intention of the parties is controlling.

[E]ach tenant acquires a joint interest in the bank account at the time of the creation of the joint tenancy. Ordinarily, either party to a joint account has the right during the lifetime of both parties to make such use of the joint account as is consistent with joint ownership. While each joint tenant is presumed to own an equal share in the joint bank account, this presumption is rebuttable.

[W]here a joint account is opened in both names merely for convenience in making withdrawals and without the intent of creating any property interests, the rights of each joint tenant are not the same.

Generally, each joint tenant of a joint tenancy bank account has the power to withdraw the whole, or any part of, the funds in the joint account.... [O]rdinarily a party to a joint bank account may appropriate to himself or herself all or part of the funds without liability to his or her co-depositor only where in fact and in law he or she is the real owner of the money.... [T]herefore, the right to withdraw funds from a joint account without accountability depends on the agreement or understanding of the parties.

(Footnotes omitted). Consistent with the general rules recited in the foregoing passage, this Court has recognized in civil cases that joint owners can agree among themselves as to the use of jointly owned property. *See, e.g., Sanders v. Sanders,* 2010 WY 77, ¶ 23, 234 P.3d 343, 350 (Wyo.2010); *Parkhurst v. Boykin,* 2004 WY 90, ¶¶ 29–31, 94 P.3d 450, 462–63 (Wyo.2004).

[¶ 28] In *Tennant v. State,* 776 P.2d 761 (Wyo.1989), we confirmed that one person can be convicted for stealing funds held with another in a joint account. Mr. Tennant became acquainted with an elderly veteran, and they agreed that the veteran's monthly income would be deposited into a joint account from which Mr. Tennant would pay the veteran's bills. In fact, Mr. Tennant spent very little of the money on the veteran and most of it on himself and his family. *Id.* at 762. We considered the parties' agreement with regard to the funds and held there was

sufficient evidence to support Mr. Tennant's conviction of larceny by bailee. *Id.* at 763–64.

[¶ 29] Bringing that rationale to bear in this case, the issue of whether Mr. Dawes was an owner of the account was a question of fact, rather than a question of law. The district court, therefore, correctly denied Mr. Dawes' motion to dismiss and allowed the jury to determine what the parties intended by setting up the joint account.

### 4. Jury Question

[¶ 30] Finally, Mr. Dawes asserts that the district court committed plain error in its response to a jury question. Because Mr. Dawes did not object to the district court's response to the question, our review is for plain error. In order to demonstrate plain error, the appellant "must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it denied him a substantial right to his material prejudice." *Creecy v. State,* 2009 WY 89, ¶ 17, 210 P.3d 1089, 1093 (Wyo. 2009). We also apply the following standards:

> When reviewing questions involving jury instructions, we afford the trial court significant deference. Jury "[i]nstructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." We confine our review to a "search for prejudicial error." "[A]s long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found."

*Id.,* ¶ 18, 210 P.3d at 1093 (citations omitted). *See also, Snow v. State,* 2009 WY 117, 216 P.3d 505 (Wyo.2009).

[¶ 31] One factor of the plain error test is satisfied in this case because the alleged error clearly appears in the record. The disputed jury question stated:

> #### Instruction # 6
>
> # 5. Define the phrase "the owner of the money"
>
> If the money is owned by more than one person, does the phrase apply to each individual owner?

The district court discussed the question with counsel and they agreed that the district court should provide the following response:

> In response to that note, the Court instructs you that:
>
> The question of who owns the money is a factual issue for the jury to decide.
>
> Please refer to the other jury instructions given to you by the Court and resume your deliberations.

[¶ 32] The next plain error factor we consider is whether the district court violated a clear and unequivocal rule of law in its response to the jury question. In *Snow,* we carefully analyzed the court's duties to instruct the jury, distinguishing between legal and factual matters. Quoting the concurring opinion authored by Circuit Judge Tatel in *United States v. Ayeni,* 374 F.3d 1313, 1320 (D.C.Cir.2004), we stated:

> Juries' legal questions, which are what usually prompt supplemental instructions, differ fundamentally from their factual questions for an obvious reason: juries do not serve as the "triers of law." They are not expected to divine the law for themselves the way they are expected to find the facts. Rather, the trial judge, aided by counsel, provides the jury with the proper legal standard. *See, e.g., Kelly v. South Carolina,* 534 U.S. 246, 256, 122 S.Ct. 726, 733, 151 L.Ed.2d 670 (2002) ("A trial judge's duty is to give instructions sufficient to explain the law . . . ."). Indeed, "[w]hen a jury makes explicit its [legal] difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). By contrast, where a jury's questions relate to a factual matter, a substantive reply (whether by the judge or the attorneys) risks interfering with the jury's exclusive responsibility for resolving factual questions. For this reason, several circuits have upheld district courts that refused to answer juries' factual questions

*Snow,* ¶ 31, 216 P.3d at 515. We have already confirmed that the issue of whether Mr. Dawes was an owner of the funds in the account or a bailee of Ms. Storer's money

was a question of fact. The district court's answer to the jury's question was, therefore, consistent with *Snow*.

[¶ 33] Mr. Dawes claims that, in any event, the district court should have provided the jury with the dictionary definition of "owner." First, we note that the jury did not ask for the dictionary definition of owner and there is no indication that it did not understand the general meaning of that term. Instead, the jury was asking for its specific meaning within § 6–3–402(b). [A] trial court is under no obligation to define a statutory term unless the term carries a technical connotation different from its everyday meaning. *Ewing v. State*, 2007 WY 78, ¶ 9, 157 P.3d 943, 946 (Wyo.2007). Mr. Dawes has not demonstrated that the term owner had a meaning within the statute that was different from its common meaning. The district court did not violate a clear and unequivocal rule of law when it did not provide the dictionary definition of the term "owner" or when it instructed the jury to determine the issue as a factual matter.

[¶ 34] Affirmed.